Dr. Stephen L. **PUTTHOFF**, Tarrant County, and Nizam Peerwani, M.D., P.A., Appellants,

v.

Edward **ANCRUM** and Jacquelyn Ancrum, Appellees.

No. 2–96–056–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 31, 1996.

Rehearing Overruled Dec. 19, 1996.

---

## OPINION

CAYCE, Chief Justice.

■ This appeal arises from a suit by the parents of Corliss Diane Ancrum against appellants Tarrant County, Nizam Peerwani, M.D., P.A. and Dr. Stephen L. Putthoff (sometimes collectively referred to as "appellants") for damages caused by an alleged negligently performed autopsy. Dr. Peerwani, P.A. is the Chief Medical Examiner for Tarrant County. Dr. Putthoff was appointed by Dr. Peerwani, P.A. as a Deputy Medical Examiner under TEX.CODE CRIM.PROC.ANN. art. 49.25, § 3 (Vernon 1979).[1] In their answers to the Ancrums' lawsuit, appellants alleged the defenses of official and sovereign immunity and filed motions for summary judgment based on their claims of immunity. The motions were denied, and this interlocutory appeal was perfected under TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1996).[2] We reverse the trial court's order denying the motions for summary judgment and render judgment for the appellants.

---

Marc H. Richman, Law Offices of Marc H. Richman, Dallas, for Dr. Putthoff.

Tim Curry, Criminal District Attorney, Patrick S. Dohoney and Dana M. Womack, Assistant District Attorneys, Fort Worth, for Tarrant County and Nizam Peerwani.

C. Gregory Shamoun and W. Charles Campbell, Law Offices of Joseph E. Ashmore, Jr., P.C., Dallas, for Appellee.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

## BACKGROUND FACTS

On March 19, 1991, Corliss Diane Ancrum asphyxiated in her home. The cause of the asphyxiation is unknown. Ms. Ancrum was taken to Arlington Memorial Hospital by ambulance. She was declared dead an hour later. Because the attending physicians could not determine the cause of Ms. Ancrum's death, it was reported by the hospital to the Tarrant County Medical Examiner's Office where an autopsy was performed by Dr. Putthoff. It was Dr. Putthoff's opinion that Ms. Ancrum died of cardiopulmonary arrest, "conceivably ... consistent with an

---

1. Section 3 provides as follows:
   Sec. 3. The medical examiner may, subject to the approval of the commissioners court, employ such deputy examiners ... as may be necessary to the proper performance of the duties imposed by this Article upon the medical examiner.
   TEX.CODE CRIM.PROC. ANN. art. 49.25, § 3.

2. Section 51.014(5) provides that:
   A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

   . . . .
   (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. . . .
   TEX.CIV.PRAC & REM.CODE ANN. § 51.014(5). Interlocutory review is available to both the individual and his employer seeking summary judgment based on the doctrine of official immunity. *See City of Beverly Hills v. Guevara*, 904 S.W.2d 655 (Tex.1995).

asphyxial death." He was not, however, able to determine what caused the cardiopulmonary arrest beyond a reasonable doubt, as required by TEX.CODE CRIM.PROC.ANN. art. 49.25, § 9 (Vernon 1979).[3] Dr. Peerwani, P.A. conducted an independent review of the autopsy report and other documents reviewed by Dr. Putthoff and concurred with Dr. Putthoff's findings. The findings of both doctors were immediately made available as public records to Ms. Ancrum's parents.

When the autopsy was completed, and upon Dr. Putthoff's instructions, the medical examiner's staff allegedly placed the body parts that had been removed from Ms. Ancrum's body in a plastic bag and sewed the bag up in Ms. Ancrum's body. The body was then transported to a funeral home.

In May 1992, more than a year after the autopsy of their daughter, the Ancrums hired an attorney to request the medical examiner's office to reopen the inquest and review the autopsy based on the belief that Ms. Ancrum had been murdered by her fiancé. In August 1992, the Ancrums hired their own pathologist to exhume the body and perform an examination to independently determine the cause and manner of death. In the course of his examination, the pathologist was unable to find the larynx or the other body parts that allegedly had been placed inside Ms. Ancrum's body cavity. However, he did determine that, in his opinion, the manner of Ms. Ancrum's death was "suspicious of a homicide by asphyxia."

On March 16, 1993, the Ancrums filed their lawsuit against appellants, alleging several negligence causes of action based on Dr. Putthoff's inability to determine beyond a reasonable doubt the manner of Ms. Ancrum's death and the absence of the larynx and other body parts, which the Ancrums allege make it more difficult to prove the cause and manner of their daughter's death. The Ancrums contend that the inability of the criminal justice system to prosecute their late daughter's fiancé has caused them emotional distress.

■ In this appeal, appellants argue that the trial court erred in denying their motion for summary judgment because Dr. Peerwani, P.A. and Dr. Putthoff, and, therefore, Tarrant County,[4] are protected from liability under the doctrine of official immunity. For the reasons that follow, we agree.

*STANDARD OF REVIEW*

■ In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded, and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kenne-*

---

3. Section 9 provides, in pertinent part:
   Sec. 9. If the cause of death shall be determined beyond a reasonable doubt as a result of the investigation, the medical examiner shall file a report thereof setting forth specifically the cause of death with the district attorney or criminal district attorney.... If in the opinion of the medical examiner an autopsy is necessary ... the autopsy shall be immediately performed by the medical examiner or a duly authorized deputy.

TEX CODE CRIM.PROC. ANN. art. 49.25, § 9.

4. If Dr. Putthoff and Dr. Peerwani, P.A. are entitled to official immunity, Tarrant County is also immune from liability. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994); *see DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995); *see also City of Beverly Hills,* 904 S.W.2d at 656 (city is entitled to rely on official immunity of employees and agents).

*dy,* 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

### APPLICATION OF OFFICIAL IMMUNITY TO MEDICAL EXAMINERS

Official immunity [5] is a common-law defense that protects government officers from personal liability in performing discretionary duties in good faith within the scope of their authority. *City of Lancaster,* 883 S.W.2d at 653–54. The purpose of official immunity was explained by the supreme court in *Kassen v. Hatley,* 887 S.W.2d 4 (Tex.1994):

> The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials. The public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions. Official immunity increases the efficiency of employees because they need not spend time defending frivolous charges.

*Id.* at 8 (citations omitted). Thus, the articulated basis for such immunity is the importance of avoiding distraction of officials from their governmental duties; the desire to avoid inhibition of discretionary actions; minimizing deterrence of able people from public service; avoiding the cost of an unnecessary trial; and insulating officials from burdensome discovery. *Travis,* 830 S.W.2d at 102 n. 4 (Cornyn, J., concurring).

There are no Texas cases holding that a medical examiner is entitled to assert official immunity, but we do have ample guidance from the decisions of two federal courts [6] and numerous decisions of other states. In *Kompare v. Stein,* 801 F.2d 883 (7th Cir.1986), two county medical examiners were sued for an autopsy that they performed that resulted in the prosecution of one plaintiff for voluntary manslaughter. In upholding the district court's granting of the medical examiners' motion for summary judgment on the basis of qualified immunity, the court reasoned:

> Qualified immunity is available to government officials performing discretionary functions. Police officers have traditionally been granted qualified immunity in cases challenging police conduct relating to arrest. The medical examiner's function in performing an autopsy is analogous to that of a police officer investigating a suspected homicide. Therefore, coroners enjoy the same qualified immunity as police officers or other investigators for the state prosecutor.

*Id.* at 887 (citations omitted). Similarly, in *Soliday v. Miami County, Ohio,* 55 F.3d 1158 (6th Cir.1995), the county coroner was sued for ordering the cremation of an in-

---

**5.** Official immunity is known by several names. As pointed out by Justice Cornyn:

> The terms "qualified" and "official" appear to be used indiscriminately and interchangeably by some courts. The logical explanation appears to be that, in state court, claims under both the Texas Tort Claims Act and 42 U.S.C. § 1983 are frequently joined. Furthermore, the elements of official immunity and qualified immunity appear for all practical purposes to be the same. In fact, as further indication of the confusion over the proper designation of this type of immunity, official immunity has been called a number of different names by a number of different courts: *See e.g. Carpenter v. Barner,* 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied) (immunity variously known as governmental, official, quasi-judicial or qualified); *Stimpson v. Plano Indep. School*

*Dist.,* 743 S.W.2d 944, 947–48 (Tex.App.—Dallas 1987, writ denied) (good faith immunity); *Baker v. Story,* 621 S.W.2d 639, 644 (Tex.Civ. App.—San Antonio 1981, writ ref'd n.r.e.) (quasi-judicial immunity).

*Travis v. City of Mesquite,* 830 S.W.2d 94, 100 n. 2 (Tex.1992) (op. on reh'g) (Cornyn, J., concurring).

**6.** The Supreme Court of Texas has noted, "Citation to federal authority is appropriate because these holdings flow not from the more liberal summary judgment rules in the federal courts, but rather from the appropriate meaning of an objective reasonableness requirement in an immunity analysis." *City of Lancaster,* 883 S.W.2d at 657 n. 8.

mate's remains without contacting the relatives of the deceased. The trial court dismissed the claim on summary judgment based on official immunity. The Sixth Circuit Court of Appeals affirmed the summary judgment on the express premise that coroners, as government officials, are entitled to "qualified immunity from civil suits for damages arising out of their performance of their official duties." *Id.* at 1164.

In addition to these federal decisions, a majority of other states have upheld the application of official immunity to medical examiners. *E.g. Stearns v. County of Los Angeles*, 275 Cal.App.2d 134, 79 Cal.Rptr. 757, 759 (1969) (finding plaintiff could not recover for alleged negligent autopsy in which plaintiff was charged with murder because causes of action fell within applicable immunity statute); *Schwalb v. Connely*, 116 Colo. 195, 179 P.2d 667, 670–71 (1947) (holding that coroner who performed autopsy on wrong man was entitled to immunity); *Stath v. Williams*, 174 Ind.App. 369, 367 N.E.2d 1120, 1125 (1977) (finding plaintiffs could not recover damages from county coroner arising out of performance of an autopsy because, *inter alia,* "[t]hese are the public duties of the coroner, which he is bound under the law to discharge, without fear or favor, in the interests of humanity and public justice"); *Burse v. Wayne County Medical Examiner*, 151 Mich.App. 761, 391 N.W.2d 479, 482 (1986) ("[A]s the operation of the Wayne County Medical Examiner's office is a governmental function ... defendant is immune from the cause of action alleged in plaintiff's complaint."); *Allinger v. Kell*, 102 Mich.App. 798, 302 N.W.2d 576, 580 (1981) ("[I]t is clear that defendant ... was immune from suit under the statute because at the time he severed the hands from the plaintiffs' daughter's corpse he was acting in his capacity as deputy medical examiner for Menominee County."), *rev'd in part*, 411 Mich. 1053, 309 N.W.2d 547 (1981); *Grad v. Kaasa*, 312 N.C.

310, 321 S.E.2d 888, 891 (1984) ("Defendant [county medical examiner] was acting within the scope of his office, and his forecast entitles him to summary judgment...."); *Epps v. Duke Univ., Inc.*, 116 N.C.App. 305, 447 S.E.2d 444, 447 (1994) ("A medical examiner is a public officer and is entitled to governmental immunity if sued in his official capacity."); *Begay v. State*, 104 N.M. 483, 723 P.2d 252, 256 (1985) ("[L]ogic would support the proposition that the decision to perform an autopsy does not involve health care.... We conclude that an allegation of negligent decision-making by the medical investigator does not fall within an exception to the legislative grant of sovereign immunity contained in the [New Mexico] Tort Claims Act."), *rev'd on other grounds sub nom. Smialek v. Begay*, 104 N.M. 375, 721 P.2d 1306, *cert. denied*, 479 U.S. 1020, 107 S.Ct. 677, 93 L.Ed.2d 727 (1986); *Frick v. McClelland*, 384 Pa. 597, 122 A.2d 43, 45 (1956) ("In the absence of bad faith or of arbitrary and capricious acts, the authority of the coroner to perform his statutorily assigned duty cannot be successfully attacked."). *But see Scarpaci v. Milwaukee County*, 96 Wis.2d 663, 292 N.W.2d 816, 827–28 (1980) (medical examiner not immune from negligence claim in performing autopsy when exercising medical discretion).

■■■ We have recently recognized that official immunity is available to death investigators employed by the Tarrant County Medical Examiner's Office. *See Tarrant County v. Dobbins*, 919 S.W.2d 877 (Tex. App.—Fort Worth 1996) (motion for reh'g pending). Certainly, medical examiners should enjoy the same protection from liability as their investigators. Therefore, based on the rationale of those federal and state court decisions upholding the application of official immunity to medical examiners, we hold that Dr. Peerwani, P.A.[7] and Dr. Put-

---

7. Dr. Peerwani, P.A. is under contract with Tarrant County to perform various functions of the Tarrant County Medical Examiner's Office. It is generally recognized that official immunity extends to private parties under contract to provide governmental duties. *Williams v. O'Leary*, 55 F.3d 320, 323–24 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 527, 133 L.Ed.2d 434 (1995);

*Frazier v. Bailey*, 957 F.2d 920, 928–29 (1st Cir. 1992); *see also Citrano v. Allen Correctional Ctr.*, 891 F.Supp. 312, 315–20 (W.D.La.1995) (private prison personnel are entitled to immunity because of, *inter alia*, public policy considerations). *Accord Eagon v. City of Elk City, Okla.*, 72 F.3d 1480, 1489–90 (10th Cir.1996); *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 402–06

thoff, as medical examiners, enjoy the same official immunity as other public officials.

Having determined that appellants are entitled to *assert* the defense of official immunity, we must now decide whether the immunity defense applies under the facts of this case. To avoid liability on the basis of official immunity, a public official must show that he or she was (1) engaged in the performance of a discretionary function (2) in good faith (3) within the scope of the official's authority. *City of Lancaster*, 883 S.W.2d at 653. It is undisputed that the medical examiners acted within the scope of their authority in performing the autopsy. Therefore, we must determine whether their acts were discretionary and performed in good faith.

### 1) *Discretionary Function*

■ Ordinarily, official immunity extends to any action or decision by a government employee that is discretionary. *Kassen*, 887 S.W.2d at 9. Discretionary decisions receive protection but ministerial duties do not. *Id.* The distinction has been explained as follows:

> Ministerial acts are those "[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial".... If an action involves personal deliberation, decision and judgment, it is discretionary; actions which *require obedience to orders* or the performance of a duty to which the actor has no choice, are *ministerial.*

*Id.* (quoting *City of Lancaster*, 883 S.W.2d at 654 (citations omitted)). The Supreme Court of Texas has further noted that courts should consider the following factors to determine when a government employee's acts involve "governmental" discretion:

1. the nature and importance of the function that the employee is performing,
2. the extent to which passing judgment on the exercise of discretion by the employee will amount to passing judg-

ment on the conduct of a coordinate branch of government or an agency thereof,

3. the extent to which the imposition of liability would impair the employee's free exercise of discretion,
4. the extent to which financial responsibility will fall on the employee,
5. the likelihood that harm will result to the public if the employee acts,
6. the nature and seriousness of the type of harm that may be produced, and
7. the availability to the injured party of other remedies and forms of relief.

*Id.* at 12 n. 8 (citing RESTATEMENT (SECOND) OF TORTS § 895D cmt. f (1977)).

■ Applying these factors to the circumstances of this case, we hold that the actions taken by Dr. Peerwani, P.A. and Dr. Putthoff were discretionary functions. In conducting the autopsy of Ms. Ancrum, they were performing the important governmental function of investigating the cause of her death for the purpose of detecting the commission of a possible crime. This is a necessary and critical function in the investigation and prosecution of crime. Had the autopsy revealed that a crime occurred, it would have served as a fundamental step to successfully prosecuting the offender and securing a fair trial for the accused. The constant threat of lawsuits would unduly burden Dr. Peerwani, P.A. and his staff in performing this function and would inevitably influence cause of death determinations. This would seriously harm the public by interfering with the efforts of law enforcement to investigate crime and hinder the search for truth in the criminal justice process.

The Ancrums contend that the actions of Dr. Peerwani, P.A. and Dr. Putthoff are not protected by official immunity because the autopsy involved the exercise of medical, and not governmental, discretion. According to the Ancrums, the Supreme Court of Texas in *Kassen* expressly ruled that there is no official immunity for the acts of government-

(7th Cir.1993); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 721–22 (10th Cir.1988).

employed medical personnel involving medical discretion. The Ancrums have misapplied *Kassen* to the facts of this case.

In *Kassen*, a doctor and nurse employed by Parkland Memorial Hospital were sued individually for medical malpractice. The wrongful death action was brought by the parents of a woman who committed suicide after being denied admittance to the hospital's psychiatric ward by the doctor and after being refused the return of her medication by the doctor and the nurse. The trial court granted summary judgment for the doctor and subsequently granted a directed verdict for the nurse on the basis of official immunity. The court of appeals reversed. *Hatley v. Kassen*, 859 S.W.2d 367, 380 (Tex.App.—Dallas 1992), *aff'd*, 887 S.W.2d at 14.

In affirming that part of the judgment of the court of appeals that reversed summary judgment for the doctor and nurse, the supreme court discussed the distinction between the discretionary acts performed by state-employed medical personnel that are governmental and those that are medical. *Kassen*, 887 S.W.2d at 11–12. Noting that "once a government health-care provider begins to treat a patient, the duty of care owed to the patient is no different from the duty of care owed by any medical professional," the court opined that a patient injured as a result of medical malpractice should not suffer without compensation "for the sole reason that the doctor or nurse is a government employee." *Id.* at 10. The court then held that government-employed medical personnel are not immune from tort liability if the character of the discretion is purely medical and instructed courts to look at the character of the discretion exercised in each instance. *Id.* at 11. The court concluded that the doctor and nurse in *Kassen* were not immune from tort liability arising from their negligence because the treatment they provided was made in the exercise of their medical discretion. *Id.* at 12.

This case is clearly distinguishable from *Kassen*. In conducting the autopsy on Ms. Ancrum, Dr. Peerwani, P.A. and Dr. Putthoff were not performing the services of a health care provider as were the doctor and nurse in *Kassen*—Ms. Ancrum was not a patient nor was the autopsy a form of medical "treatment." While the autopsy procedures required the skill and expertise of a trained pathologist, they were performed for the sole governmental objective of investigating the cause of Ms. Ancrum's death under TEX. CODE CRIM.PROC. ANN. art. 49.25, § 6 (Vernon Supp.1996).[8] Thus, we conclude that the

8. Section 6 provides as follows:

Sec. 6. Any medical examiner, or his duly authorized deputy, shall be authorized, and it shall be his duty, to hold inquests with or without a jury within his county, in the following cases:

1. When a person shall die within twenty-four hours after admission to a hospital or institution or in prison or in jail;

2. When any person is killed; or from any cause dies an unnatural death, except under sentence of the law; or dies in the absence of one or more good witnesses;

3. When the body of a human being is found, and the circumstances of his death are unknown;

4. When the circumstances of the death of any person are such as to lead to suspicion that he came to his death by unlawful means;

5. When any person commits suicide, or the circumstances of his death are such as to lead to suspicion that he committed suicide;

6. When a person dies without having been attended by a duly licensed and practicing physician, and the local health officer or registrar required to report the cause of death under Section 193.005, Health and Safety Code, does not know the cause of death. When the local health officer or registrar of vital statistics whose duty it is to certify the cause of death does not know the cause of death, he shall so notify the medical examiner of the county in which the death occurred and request an inquest;

7. When the person is a child who is younger than six years of age and the death is reported under Chapter 264, Family Code; and

8. When a person dies who has been attended immediately preceding his death by a duly licensed and practicing physician or physicians, and such physician or physicians are not certain as to the cause of death and are unable to certify with certainty the cause of death as required by Section 193.004, Health and Safety Code. In case of such uncertainty the attending physician or physicians, or the superintendent or general manager of the hospital or institution in which the deceased shall have died, shall so report to the medical examiner of the county in which the death occurred, and request an inquest.

The inquests authorized and required by this Article shall be held by the medical examiner of the county in which the death occurred.

character of the discretion Dr. Peerwani, P.A. and Dr. Putthoff exercised in performing the autopsy was governmental even though the procedures used in performing the autopsy involved medical discretion.

The Ancrums' reliance on *Scarpaci v. Milwaukee County,* 96 Wis.2d 663, 292 N.W.2d 816 (1980) is also misplaced. The plaintiffs in *Scarpaci* charged the defendants with the "wrongful performance of an autopsy on the body of their deceased child." *Id.* at 817. All of the plaintiffs' causes of action were based in part on the allegation that the medical examiner was unauthorized to perform the autopsy without the parents' permission and over their express objection. *Id.* at 818. The defendants moved to dismiss the case for failure to state a claim on the grounds that the medical examiner is immune from suit any time an autopsy is performed. The trial court denied the motion, and the defendants appealed. *Id.*

The Wisconsin Supreme Court affirmed and reserved the question of whether the examiner had the authority to perform the autopsy under Wisconsin law for the trial court to determine. *Id.* at 818, 831. The court, however, held that the discretion exercised by a medical examiner when performing an autopsy does not relate to the examiner's function as a government official because an autopsy is a medical procedure in which the examiner makes medical decisions. Thus, when a government official performs a function requiring medical discretion as opposed to governmental discretion, the Wisconsin court held that the official does not act in a quasi-judicial capacity, and, therefore, is not protected by immunity. *Id.* at 827–28.

Unlike *Scarpaci,* the summary judgment evidence in this case conclusively establishes that the medical examiners had the authority to perform the autopsy under Tex.Code Crim.Proc. Ann. art. 49.25, § 6. Moreover, as stated above, we find that autopsies performed for the purpose of investigating deaths pursuant to article 49.25 predominant-

ly involve governmental discretion, even though the medical procedures employed by the examiners require the exercise of medical discretion. Therefore, we disagree with *Scarpaci* to the extent that it may be construed to hold that medical examiners who lawfully perform autopsies to investigate causes of death are not entitled to rely on official immunity in suits alleging misconduct in the performance of an autopsy merely because they exercised medical discretion in performing the autopsy.

## GOOD FAITH

■ The Ancrums contend that the trial court correctly denied the appellants' motion for summary judgment because there is a fact issue on the question of whether Dr. Peerwani, P.A. and Dr. Putthoff acted in good faith. We disagree.

■ In *City of Lancaster,* the supreme court adopted a good faith test consisting of "objective legal reasonableness." 883 S.W.2d at 656. This standard applies in all qualified or official immunity cases. *Murillo v. Garza,* 881 S.W.2d 199, 202 (Tex. App.—San Antonio 1994, no writ). The element of good faith is satisfied when it is shown that a reasonably prudent person in the same or similar circumstances would have taken the same actions. *City of Houston v. Newsom,* 858 S.W.2d 14, 18 (Tex. App.—Houston [14th Dist.] 1993, no writ). To controvert summary judgment proof on good faith, the plaintiff must do more than show a reasonably prudent person would not have taken the same action; "the plaintiff must show that '*no* reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *City of Lancaster,* 883 S.W.2d at 657 (emphasis added).

The summary judgment evidence in this case establishes Dr. Peerwani, P.A. and Dr. Putthoff acted in good faith. In support of their motions for summary judgment, the appellants submitted the affidavits of four

In making such investigations and holding such inquests, the medical examiner or an authorized deputy may administer .oaths and take affidavits. In the absence of next of kin or legal representatives of the deceased, the medical examiner or authorized deputy shall take charge of the body and all property found with it.

Tex.Code Crim Proc. Ann. art. 49.25, § 6.

medical examiners, in addition to the affidavits of Dr. Peerwani, P.A. and Dr. Putthoff, who stated that in reviewing the same material and under the same or similar circumstances, a reasonable and prudent medical examiner would have performed an autopsy on Ms. Ancrum in the same manner as Dr. Putthoff. The affidavits further state that the autopsy was performed appropriately and in accordance with the common practices of medical examiners in the State of Texas. All six of the affiants determined that the findings of the autopsy were proper and correct. The Ancrums, on the other hand, presented the affidavit of Dr. William Eckert, the pathologist who performed the second autopsy on Ms. Ancrum. In his affidavit, Dr. Eckert opined that "a reasonably prudent medical examiner would have conducted a more thorough examination" and that Dr. Putthoff's failure to photograph and save Ms. Ancrum's larynx constituted "a breach of the applicable standard of care for medical examiners performing autopsies."

Applying the test for good faith enunciated in *City of Lancaster*, Dr. Eckert's affidavit does not raise a material fact issue on the question of whether Dr. Peerwani, P.A. and Dr. Putthoff acted in good faith in conducting the autopsy on Ms. Ancrum. Because the summary judgment evidence shows that medical examiners of reasonable competence disagree on this issue, we are compelled to find that the autopsy was performed in good faith. *See City of Lancaster*, 883 S.W.2d at 657.

## *ADEQUACY OF NOTICE UNDER THE TEXAS TORT CLAIMS ACT*

■■■ The County contends that the Ancrums' Texas Tort Claims Act causes of action are barred because the Ancrums failed to provide the County with timely notice of the claim.[9] We agree. In order to overcome the shield of official immunity, a plaintiff must follow the notice requirements of TEX.

CIV.PRAC. & REM.CODE ANN. § 101.101 (Vernon 1986). This section requires notice as follows:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

. . . .

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

*Id.* Actual notice is accomplished when the governmental unit has knowledge of the injury, its alleged or possible fault producing or contributing to the injury, and the identity of the person injured. *Parrish v. Brooks*, 856 S.W.2d 522, 525 (Tex.App.—Texarkana 1993, writ denied). Mere notice that an incident has occurred is not enough to establish actual notice. *Cathey v. Booth*, 900 S.W.2d 339, 340 (Tex.1995); *Garcia v. Texas Dep't of Criminal Justice*, 902 S.W.2d 728, 730–31 (Tex. App.—Houston [14th Dist.] 1995, no writ).

The Texas Supreme Court has described the purpose for the mandatory notice requirements of section 101.101 as follows:

The purpose of the "notice of claim" requirement, as recognized by this Court, is to ensure a prompt reporting of claims to enable the municipality to investigate while facts are fresh and conditions remain substantially the same. Such opportunity to investigate, predicated upon timely reporting of claim of injury, enables the city to gather the information needed to guard

---

9. The Ancrums erroneously contend that we have no jurisdiction to consider the Texas Tort Claims Act notice issue in this interlocutory appeal. As previously noted, TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) provides for an interlocutory appeal from any order that "denies a motion for summary judgment that is based on an assertion of immunity." Because the Ancrums' compliance with the waiver provisions of the Texas Tort Claims Act is determinative of whether Tarrant County is entitled to rely on the defense of immunity, we clearly have jurisdiction over the issue under section 51.014(5).

against unfounded claims, settle claims and prepare for trial.

*City of Houston v. Torres,* 621 S.W.2d 588, 591 (Tex.1981); *see Dinh v. Harris County Hosp. Dist.,* 896 S.W.2d 248, 251 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.); *Parrish,* 856 S.W.2d at 525.

The failure to give notice under section 101.101 precludes the waiver of official immunity. *Garcia,* 902 S.W.2d at 731; *Cox v. Klug,* 855 S.W.2d 276, 278 (Tex.App.—Amarillo 1993, no writ); *Reese v. Texas State Dep't of Highways & Public Transp.,* 831 S.W.2d 529, 530–31 (Tex.App.—Tyler 1992, writ denied). Moreover, when a governmental entity maintains its immunity through the failure of a plaintiff to give notice as required by section 101.101, the individual employees are also immunized from any further liability from the plaintiff's actions based on the lack of notice. *Thomas v. Oldham,* 895 S.W.2d 352 (Tex.1995); *City of Bedford v. Schattman,* 776 S.W.2d 812 (Tex.App.—Fort Worth 1989, orig. proceeding).

It is undisputed that the Ancrums did not give written notice of their claim within six months after the incident in question. They contend, however, that because they did not discover that the larynx and other body parts of Ms. Ancrum were missing until the exhumation and second examination by Dr. Eckert on the 14th day of August 1992, notice was not required until after this discovery. This contention is without merit. The statute sets out specifically what type of notice is required to bring a claim under the act. As stated in *Harris County v. Dowlearn,* 489 S.W.2d 140, 146 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.), *disapproved of in part on other grounds by State Dep't of Highways v. Payne,* 838 S.W.2d 235, 239 n. 3 (Tex.1992):

> The Act itself provides for the notice requirements, and sec. 16[10] of the Act is clearly intended to be an exclusive notice requirement for purposes of bringing suit under the Act. The express mention or enumeration of one thing, consequence or class is equal to an express exclusion of all others. 53 Tex.Jur.2d Statutes sec. 142

(1964). Moreover, the Act contains a repealer clause which repeals all laws in conflict with Art. 6252–19 to the extent of such conflict. (sec. 20).

*Id.* Following the "plain, mandatory and compelling wording" of the statute, we hold that the discovery rule does not apply to claims made under the Texas Tort Claims Act. *See University of Texas Medical Branch v. Greenhouse,* 889 S.W.2d 427, 431–32 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (op. on reh'g); *Sanford v. Texas A & M Univ.,* 680 S.W.2d 650, 652 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.).

In the instant case, the summary judgment evidence establishes that neither formal, written notice nor actual notice was provided to Tarrant County within six months of the incident giving rise to the Ancrums' assertion of a claim for negligence. Therefore, the Ancrums' claims are barred as a matter of law.

We sustain point of error one of the County and Dr. Peerwani, P.A. and points of error one and three of Dr. Putthoff. Having held that appellants are immune from liability, it is unnecessary to address the County's second point of error and Dr. Putthoff's points of error two, four, five, or six.

We reverse the order denying summary judgment and render judgment that the Ancrums take nothing on their causes of action against the County, Dr. Peerwani, P.A., and Dr. Putthoff.

---

10. Before the codification of the Civil Practice and Remedies Code, the Tort Claims Act was at article 6252–19, section 16 of the Revised Civil Statutes.