

NUMBER 13-09-00011-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI    -    EDINBURG

CITY OF PHARR,                                                    Appellant,

v.

MARIE ESTHER AGUILLON a/k/a
MARIA ESTHER AGUILLON,                            Appellee.

On appeal from the County Court at Law No. 1
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela**
**Memorandum Opinion by Chief Justice Valdez**

In this accelerated interlocutory appeal, appellant, the City of Pharr (the "City"), challenges the trial court's denial of its plea to the jurisdiction in favor of appellee, Marie Esther Aguillon a/k/a Maria Esther Aguillon. By one issue, the City argues that the trial court lacked subject-matter jurisdiction over Aguillon's claims because she did not meet

the statutory requirements of the Texas Tort Claims Act (the "Act") and because she did not demonstrate that governmental immunity was waived. We reverse and remand.

## I. BACKGROUND

On January 20, 2006, at approximately 3:15 p.m., Aguillon attempted to cross the street at the intersection of South Cage Boulevard and East Caffery Avenue in Pharr, Texas. Aguillon allegedly began walking in the crosswalk once the crosswalk signal indicated that it was safe for her to cross the street. However, while inside the crosswalk, Aguillon noticed that a car driven by Salvador Vazquez was approaching at a high rate of speed. Aguillon also allegedly noticed that the crosswalk signal indicated that it was no longer safe to cross the street after only a very short period of time. On appeal, Aguillon states that she was only able to take five or six steps into the crosswalk before the signal changed to indicate that it was no longer safe to cross the street. In any event, Aguillon was struck by Vazquez's car and suffered severe injuries as a result of the collision.[1]

On September 8, 2006, Aguillon filed her original petition[2] alleging negligence and negligent entrustment causes of action against Vazquez and the owner of the car, Maria Palencia.[3] Later, on November 13, 2007, Aguillon filed her first amended petition, adding the City and the Texas Department of Transportation as parties to the case and asserting,

---

[1] In her second amended petition, Aguillon stated that she sustained "a broken ankle, cervical sprain/strain, thoracic sprain/strain[,] and bruises and contusions all over her body" as a result of the collision.

[2] In her original petition, Aguillon made the following factual allegations:

> Before the Plaintiff [Aguillon] entered into the cross[]walk[,] the cross[]walk indicated that it was safe for her to walk. Once inside the cross[]walk[,] the Plaintiff states that she noticed a car being driven by Salvador Vazquez coming at a high rate of speed. She noticed that the driver was not paying attention and appeared to be on a cell phone prior to this impact. When she tried to avoid getting hit by the oncoming car[,] she felt that she did not move fast enough and the car struck her. The impact caused [] her to be thrown through the air and landing [sic] in a manner that caused her to suffer severe injuries.

Aguillon did not make any allegation as to the timing of the crosswalk signal devices in her original petition.

[3] Vasquez and Palencia are not parties to this appeal.

2

in particular, negligence causes of action against the City.[4]  Aguillon filed her second amended petition on April 4, 2008, alleging that the City was negligent:  "[i]n failing to properly program the crosswalk signal device to allow Plaintiff and other pedestrians sufficient time to safely use and/or traverse the crosswalk," "[i]n failing to properly maintain and inspect the crosswalk signal device to ensure it was functioning as desired," and "[i]n failing to correct the malfunction and/or condition of the crosswalk signal device within a reasonable time after notice."

In response to Aguillon's allegations, the City filed a plea to the jurisdiction on March 5, 2008.  The City subsequently amended its plea to the jurisdiction on March 31, 2008, and on November 26, 2008.  In its November 26, 2008 plea to the jurisdiction, the City alleged that Aguillon did not provide proper notice of her claims to the City and that immunity had not been waived in this set of circumstances; therefore, the trial court lacked subject-matter jurisdiction over Aguillon's claims.  In support of its plea to the jurisdiction, the City attached a letter from Aguillon's trial counsel dated February 15, 2007, and marked "received" February 22, 2007, which notified the City that Aguillon had sustained injuries on January 20, 2006, as a result of the defective crosswalk signal devices and that the City was liable for her injuries.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) (Vernon 2005).  The City also attached:  (1) an affidavit executed by Joe Cantu, the Director of Administrative Services for the City; (2) deposition testimony of Roy Garcia, Director of Public Works for the City; and (3) Aguillon's deposition testimony.

Shortly thereafter, Aguillon filed a response to the City's November 26, 2008 plea to the jurisdiction.  After a hearing, the trial court denied the City's plea to the jurisdiction. The City now brings this accelerated interlocutory appeal.  *See* TEX. R. APP. P. 28.1; *see*

---

[4] The Texas Department of Transportation was non-suited from the case on September 2, 2008.

*also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(8) (Vernon 2008) (permitting an appeal from an interlocutory order granting or denying a plea to the jurisdiction filed by a governmental unit), 101.001(3)(B) (Vernon 2005) (defining a "governmental unit" to include "any city").

## II. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction. *Id.*; *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has subject-matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.–Fort Worth 2003, pet. denied). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.–Fort Worth 2004, pet. denied). In addition to the pleadings, we may consider evidence in the record and must do so when necessary to resolve the jurisdictional issue that was before the trial court. *Blue*, 34 S.W.3d at 555.

4

By its first issue, the City contends that it was entitled to receive notice of Aguillon's claim within six months of when the incident giving rise to the claim occurred, and Aguillon's alleged failure to timely provide such notice deprived the trial court of subject-matter jurisdiction. Aguillon counters that the City had actual notice of the incident giving rise to her lawsuit because Garcia was aware of the incident and noted, in his deposition, that the City tested and inspected the pedestrian signals the day after the incident; thus, by testing and inspecting the signals, the City was "subjectively aware" of its potential liability for the accident.

In arguing that Aguillon's alleged failure to comply with the notice provisions of the Texas Tort Claims Acts divested the trial court of subject-matter jurisdiction, the City relies heavily on section 101.101 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101. Section 101.101 provides the following:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> > (1) the damage or injury claimed;
> >
> > (2) the time and place of the incident; and
> >
> > (3) the incident.
> >
> > . . . .
>
> (c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

*Id.* The City also argues that because Aguillon filed suit after September 1, 2005, and because Aguillon allegedly failed to comply with section 101.101 of the civil practice and

5

remedies code, the trial court was deprived subject-matter jurisdiction under section 311.034 of the government code. *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2009) (providing that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity"); *see also Putthoff v. Ancrum*, 934 S.W.2d 164, 173 (Tex. App.–Fort Worth 1996, writ denied) (holding that if a plaintiff does not satisfy the notice requirements of section 101.101, then immunity is not waived).

In her responses to the City's plea, Aguillon argued that the City had actual notice of the incident and its potential liability for her injuries and referenced Garcia's deposition testimony, which reflected that he: (1) "heard a yell"; (2) approached the scene of the accident and observed Aguillon lying on the pavement; and (3) ordered an inspection of the traffic signals to be conducted on the next day. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c).

Actual notice to a governmental unit requires knowledge of: (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam) (noting also that the purpose of the notice requirement "is to ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial"); *see also Tex. Dep't of Pub. Safety v. Rivera*, No. 13-01-293-CV, 2002 Tex. App. LEXIS 2911, at **15-16 (Tex. App.–Corpus Christi Apr. 25, 2002, no pet.). To have actual notice within the context of section 101.101, the governmental unit must have the same information it would have had if the claimant had

6

complied with the formal notice requirements. *See Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 633 (Tex. App.–Corpus Christi 1988, writ denied); *see also Rivera*, 2002 Tex. App. LEXIS 2911, at *16. Mere notice that an incident has occurred is not enough to establish actual notice for purposes of the Act. *See Putthoff*, 934 S.W.2d at 173 (citing *Cathey*, 900 S.W.2d at 340; *Garcia v. Tex. Dep't of Criminal Justice*, 902 S.W.2d 728, 730-31 (Tex. App.–Houston [14th Dist.] 1995, no writ)). "Alleged fault" includes the governmental unit's "subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury":

> It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault. If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.

*Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347-48 (Tex. 2004)[5]; *see Tex. State Tech. College v. Evans*, No. 10-08-00256-CV, 2009 Tex. App. LEXIS 1909, at **6-7 (Tex. App.–Waco Mar. 18, 2009, no pet.) (mem. op.). The *Simons* court further stated that:

> Certainly, when records or investigative reports give no indication that a governmental unit has been at fault in an incident, it has no actual notice.
>
> . . . .
>
> By holding in *Cathey* that actual notice to a governmental unit requires knowledge of . . . the governmental unit's alleged fault producing or contributing to the death, injury, or property damage, we did not mean that the governmental unit was required to know that the claimant has actually made an allegation of fault. . . . *Cathey* cannot fairly be read to suggest that a governmental unit has actual notice of a claim if it could or even should

---

[5] The *Simons* court went on to hold that the notice requirement was not jurisdictional, a holding that has since been superseded. *See Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004); *see also* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2009).

have learned of its possible fault by investigating the incident. Interpreted so broadly, subsection (c) would become the rule, leaving subsection (a) as the exception for situations when the governmental unit was wholly unaware that any incident had occurred at all. Governmental units would not be given notice of most incidents and would thus have some need to investigate them all, which, as we explained in *Cathey*, would defeat the purpose of the notice provision. What we intended in *Cathey* by the second requirement for actual notice was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a). That includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury.

140 S.W.3d at 345, 347 (internal quotations and citations omitted). The determination of whether a governmental unit received actual notice is a question of fact but may be determined as a matter of law where the evidence is insufficient to raise a fact issue. *Alvarado v. City of Lubbock*, 685 S.W.2d 646, 649 (Tex. 1985); *Lorig v. City of Mission*, 629 S.W.2d 699, 701 (Tex. 1982).

The record demonstrates that Aguillon first notified the City of her injuries and the City's potential liability by letter dated February 15, 2007, more than a year after Aguillon's January 20, 2006 accident. In any event, attached to Aguillon's response to the City's plea to the jurisdiction is a police report filed by City of Pharr Police Officer Eustolio Averalo, which was filed on January 20, 2006, and stated that Arevalo conducted the investigation of the scene of the accident.[6] Garcia testified that his office received a copy of Officer Averalo's report and that the City was aware that Aguillon had been injured. Moreover, Garcia testified that he "heard a yell" at the time of the incident and that he quickly ran to

---

[6] In his report, Officer Arevalo noted that he believed that "Pedestrian [Aguillon] failed to yield right of way while a 'don't walk' signal was present[;] thus, [she] was struck by Unit 1 [Vasquez's vehicle]." Officer Arevalo also noted that Raymon Rubio, Aguillon's employer, observed Aguillon cross the street, and while doing so, Rubio saw Aguillon "[look] toward the roadway and [hold] up her left hand in a stopping manner." After conducting his investigation, Officer Arevalo did not find that the cause of the accident was attributable to malfunctioning or mistimed crosswalk signals. Additionally, Officer Arevalo's police report does not indicate that Aguillon made an allegation that the crosswalk signal devices had malfunctioned or did not allow her sufficient time to cross the street.

8

the scene to get a closer view of what had happened.[7]  Garcia recalled that he saw Aguillon lying in the middle of South Cage Boulevard with obvious injuries to her ankle. Garcia then returned to his office, reported the incident, and arranged for a "random inspection" of the traffic signals at the intersection of South Cage Boulevard and East Caffery Avenue.  Garcia testified that it is customary for the City to inspect traffic signals after any and all accidents occurring near intersections within the City limits.  Garcia further testified that the inspection of the traffic signals did not yield any finding of malfunctions; thus, the City had no reason to suspect that it was at fault for Aguillon's injuries.  Garcia later admitted that the inspectors did not check to see if the timing of the signals was incorrect because such an allegation was never brought to his attention.[8]  Aguillon also appended to her response a second police report filed on March 31, 2006, indicating that another accident had occurred at this same intersection involving a vehicle and a pedestrian.[9]

However, as stated in *Simons*, just because the City should have been aware of its potential liability or because the City investigated as part of routine safety procedures, Aguillon was not relieved of her duty to inform the City of its potential liability for her injuries within the prescribed time period in section 101.101.  *See* TEX. CIV. PRAC. & REM. CODE

---

[7] Garcia stated in his deposition that he "didn't visualize the actual accident," he "saw people running," and he was not contacted by police to give a statement as to cause of the accident.

[8] With respect to the City's awareness of the alleged timing issue associated with the traffic signal, Aguillon's trial counsel asked Garcia about the City's failure to check the timing of the crosswalk signal to which he responded:

> Yes, I would have a timing concern but not on the actual device.  I would think the lady did not have sufficient time to cross a crosswalk based on she walking too late or too [sic] before the actual signal notifying her.  So at that point in time, yes, I may have had a concern on timing, but nothing to trigger it off to the actual timing of the operations of the signal itself; just timing on the person itself [sic] whether she didn't have enough time to cross.

[9] The police officer who investigated the March 31, 2006 incident noted in his report that the cause of the collision was the failure of the driver of the vehicle to yield right of way to the pedestrian.

ANN. § 101.101; *see also Simons*, 140 S.W.3d at 347-48; *Blevins v. Tex. Dep't of Transp.*, 140 S.W.3d 337, 337 (Tex. 2004) (per curiam) ("The court of appeals correctly concluded that TxDOT's knowledge of the accident and the presence of its employees at the scene did not provide TxDOT actual notice of petitioners' claim within the meaning of section 101.101(c)."). Furthermore, based on our review of the record, Agullion has not presented jurisdictional evidence demonstrating the City was "subjectively aware" of its fault in producing or causing her injuries within the statutory time period prescribed in section 101.101. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101; *Cathey*, 900 S.W.2d at 341; *see also Rivera*, 2002 Tex. App. LEXIS 2911, at **15-16.

Nevertheless, Aguillon cites to *City of San Antonio v. Johnson*, 103 S.W.3d 639, 641-42 (Tex. App.–San Antonio 2003, pet. denied), and *City of San Angelo v. Smith*, 69 S.W.3d 303, 307 (Tex. App.–Austin 2002, pet. denied), to support her contention that the City had actual notice "to the extent that as a prudent entity it took the opportunity to ascertain its potential liability stemming from this incident by conducting a further investigation." However, we do not find either of these cases to be persuasive because they both pre-date the supreme court's holding in *Simons* and, therefore, do not reconcile with the supreme court's latest jurisprudence regarding actual notice within the context of section 101.101. *See* 140 S.W.3d at 347-48; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101.

We therefore conclude that Aguillon has not satisfied her burden of proving that the City had actual notice or, in other words, knowledge of: (1) a death, injury, or property damage; (2) its alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved within the time period prescribed by section 101.101. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101; *Cathey*, 900 S.W.2d at 341; *see also Rivera*, 2002 Tex. App. LEXIS 2911, at **15-16. Moreover, Aguillon's

10

February 15, 2007 letter notifying the City of the incident and its potential liability does not comport with section 101.101's six-month notice requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). Thus, because Aguillon has not satisfied the notice requirement imposed by section 101.101, we further conclude that the trial court lacked subject-matter jurisdiction over her claims against the City. *See id.*; *see also* TEX. GOV'T CODE ANN. § 311.034; *Putthoff*, 934 S.W.2d at 173. Accordingly, we sustain the City's first issue.

## IV. CONCLUSION

Having sustained the City's first issue, we need not address its second issue. *See* TEX. R. APP. P. 47.1. As such, we reverse the trial court's denial of the City's plea to the jurisdiction, and we remand for proceedings consistent with this opinion.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
25th day of March, 2010.

11