**Roberto MURILLO and The City of Laredo, Appellants,**

**v.**

**Federico GARZA, Jr., San Juana Rosas Medrano and Rita Maria Rodriguez, Appellees.**

**No. 04–94–00562–CV.**

Court of Appeals of Texas, San Antonio.

Feb. 22, 1995.

Rehearing Overruled Aug. 16, 1995.

Ricardo J. Navarro, Charles H. Sierra, Denton, McKamie & Navarro, P.C., San Antonio, for appellants.

Donato Ramos, Anthony (Tony) Trevino, Jr., Person, Whitworth, Ramos, Borchers & Morales, Laredo, for appellees.

Before CHAPA, C.J., and HARDBERGER and GREEN, JJ.

**OPINION**

CHAPA, Chief Justice.

This is an interlocutory appeal arising from the denial of a motion for summary judgment based on official immunity. Appellants Murillo and the City of Laredo assert that the trial court erred in denying their motion for summary judgment based on official immunity. We affirm.

In October 1992, Estefana Rosas was struck by a tractor-trailer rig and killed as she attempted to cross the intersection of Scott Street and San Agustin in Laredo. Appellees (Ms. Rosas's survivors) brought suit against appellants (the City of Laredo and Roberto Murillo, the City of Laredo

Traffic Engineer), alleging negligence and premises defect in that appellants knew that the intersection constituted a dangerous condition but failed to take steps to correct that condition. Appellees alleged that the combination of increased traffic flow, designation of Scott Street as a truck route, and lack of traffic signals at that intersection, combined with the presence of a traffic signal at the next intersection, caused traffic to back up into the intersection of Scott and San Agustin, preventing pedestrians from seeing oncoming traffic when trying to cross the street. There is summary judgment evidence that this condition was known to Murillo and the City.

Murillo filed a motion for summary judgment based on official immunity; the trial court denied the motion. In affirming the denial of the summary judgment, we held that Murillo conclusively established that the action complained of was discretionary rather than ministerial and that he was acting within the scope of his official duties and authority, but that he failed to establish as a matter of law that he acted in good faith. *See Murillo v. Garza,* 881 S.W.2d 199 (Tex. App.—San Antonio 1994, no writ). Following our affirmance, Murillo and the City of Laredo together filed a second motion for summary judgment, again asserting official immunity. The trial court again denied the motion.

In point of error one, appellants contend that the trial court erred in refusing to grant their motion for summary judgment based on Roberto Murillo's official immunity. The rules governing review of a trial court's ruling on a motion for summary judgment are well-settled: The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every

reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in his favor. *Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311. A defendant moving for summary judgment on an affirmative defense must conclusively prove all elements of that defense. *Swilley,* 488 S.W.2d at 67.

 Official immunity is an affirmative defense; the burden is on the defendant to establish each element of that defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *see also Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994) (defendant has summary judgment burden to conclusively establish each element).

> Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority.

*City of Lancaster,* 883 S.W.2d at 653; *see also Kassen,* 887 S.W.2d at 9. Thus, to be entitled to summary judgment, it is appellants' burden to prove that Murillo was performing a discretionary duty in good faith within the scope of his authority as city traffic engineer.

Appellants assert that our prior opinion in this case is "law of the case" on the issues of discretionary duty and scope of authority. We first note that appellees do not dispute that Murillo was acting within the scope of his authority; this element of official immunity is not in issue. Also, because we hold that appellants did not establish good faith as a matter of law, we need not determine whether appellants conclusively proved that Murillo was performing a discretionary function or whether our prior opinion constitutes law of the case. Similarly, we need not address appellees' contention that Murillo is not entitled to immunity because he was exercising professional rather than governmental discretion. *See Kassen,* 887 S.W.2d at 11–12 (no immunity for exercise of medical discretion).

In *City of Lancaster v. Chambers,* 883 S.W.2d 650 (Tex.1994), the supreme court addressed the issue of proving the official immunity element of good faith in the context of a police pursuit. The court fashioned a new test, which was derived from the federal test for qualified immunity in § 1983 cases. The court held that a police officer acts in good faith in a pursuit case if:

> a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

*Id.* at 656. Stated more generally, a non-movant seeking to defeat summary judgment must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.* at 657 (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)). The court conceded that the test is somewhat less likely than the federal test to resolve the issue of immunity at the summary judgment stage, but noted that "[e]ven federal immunity law does not guarantee resolution of the immunity issue at summary judgment." *Id.*

 Murillo's affidavit in support of his motion for summary judgment sets out his professional qualifications and states that he always carried out his duties in the subjective good faith belief that he was making the best decision about a given traffic engineering problem. The test for good faith, however, as set forth above, is an objective test. *See City of Lancaster,* 883 S.W.2d at 656 (test of objective legal reasonableness).

 Appellants also filed an affidavit from Murillo's superior, Aranda, stating that he had reviewed Murillo's work product concerning the intersection at issue and did not find him remiss in the exercise of his duties. Aranda concluded that Murillo acted properly and in good faith. Appellants also filed an affidavit from an expert named Nix who reviewed the depositions and exhibits and visited the scene. Nix concluded that Murillo exercised his duties reasonably and in good faith. Nix specifically disagreed with the proposition that no reasonable traffic engineer in similar circumstances would have failed to recommend traffic control improvements or upgrades at the intersection. His

opinion was that a reasonable engineer could have reached the same conclusions as did Murillo.

Appellees filed a controverting affidavit by a consulting traffic engineer, Steitle, stating that he was familiar with the intersection in issue and had reviewed various depositions, the Laredo Code, the Texas Manual on Uniform Traffic Control Devices, and the Policy on Geometric Design of Highways and Streets. Steitle set forth the analysis he conducted on the intersection, the sources of information used in that analysis, and information showing that the City and Murillo had knowledge of the condition of the intersection. Steitle concluded that Murillo's conduct in regard to the intersection was unreasonable and negligent. Steitle then filed a supplemental affidavit, specifically incorporating this first affidavit. In the supplemental affidavit Steitle concluded as follows:

> A reasonably prudent traffic engineer and/or person in the position of Roberto Murillo, could not and should not have believed that there was no need to take any appropriate action including the adding of appropriate traffic controls or otherwise take other appropriate remedial measures to eliminate the clear risks of harm to the decedent and general public existing at Scott and San Agustin without adding appropriate remedial measures at said intersection.

Appellants assert that Steitle's affidavit cannot controvert Murillo's proof of good faith because it is based on the assumption that a City of Laredo ordinance creates a mandatory duty to place a traffic control device at the intersection. Appellants point out that we rejected that construction of the ordinance in our prior opinion and conclude that the affidavit is therefore flawed. First, while the affidavit and supplemental affidavit make reference to the city ordinance, the

conclusions reached therein are not based solely on Steitle's interpretation of that ordinance as mandatory. Further, even if we were to assume that our prior conclusion regarding the city ordinance is law of the case and that the ordinance did not create any mandatory duty, we still cannot agree that the controverting affidavit does not raise the issue of lack of good faith. Whether or not the ordinance mandated any particular action be taken in regard to the intersection, it is evidence of a standard that a reasonably competent engineer would have taken into consideration. Murillo admitted that he was to be guided by the local ordinances as well as state regulations. Thus, mandatory or not, those standards and ordinances are relevant to the determination of what a reasonable person in Murillo's position would have concluded.

Appellants conceded at oral argument that appellees' controverting affidavit specifically addresses the test for good faith set forth in *City of Lancaster*. Even so, appellants urged that, once Murillo filed affidavits by any engineer stating that Murillo's action was justified, appellees could not avoid summary judgment even if they filed an appropriate controverting affidavit. Appellants' apparent rationale is that any controverting affidavit would simply demonstrate that engineers of reasonable competence could disagree on the issue of whether Murillo's actions were justified. In such circumstances, appellants urge, immunity must be recognized. *See City of Lancaster*, 883 S.W.2d at 657.[1]

■ Appellants declined to state that they are advocating an all-or-nothing approach to establishing good faith, but that is the effect of their argument on appeal. If the movant files summary judgment proof demonstrating that even one person in the defendant's posi-

---

1. Appellants cite *City of Lancaster* for the proposition that if reasonable persons could disagree, immunity should be recognized. This was not the holding of the court, however, but was simply a parenthetical quote from *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). In *Malley*, the Supreme Court *upheld* a Court of Appeals decision *reversing* the trial court's directed verdict in favor of a police officer on immunity grounds. The Court did not

determine as a matter of law whether the officer was entitled to immunity, but remanded to the trial court for trial on that issue. Similarly, the Texas Supreme Court in *City of Lancaster* did not determine immunity as a matter of law but remanded the cause to the trial court for further proceedings. Obviously, then, the supreme court did not contemplate that its new test would always result in a grant of summary judgment.

tion would have thought the actions were justified, the defendant is entitled to summary judgment no matter what the nonmovant files in response. Thus, summary judgment would automatically be granted to any defendant able to produce such an affidavit.

We recognize that the supreme court in *City of Lancaster* stated that it was raising the standard of proof necessary to defeat a claim of official immunity in response to a motion for summary judgment. *City of Lancaster*, 883 S.W.2d at 656. The court in that case did not, however, state any absolute entitlement to resolution of the official immunity defense at the summary judgment stage. *Id.* at 657 (no guarantee of resolution at summary judgment). Further, nothing in *City of Lancaster* abrogates the long-standing rules stated above that govern summary judgment review. To the contrary, after *City of Lancaster* the supreme court reaffirmed the application of these rules in *Kassen v. Hatley*, another official immunity case. *See Kassen*, 887 S.W.2d at 8 n. 2.[2] Thus, we must accept as true all evidence favorable to the nonmovants and must apply all inferences and resolve all doubts in their favor. *Nixon*, 690 S.W.2d at 548–49. We must also bear in mind that it is not appellees' burden to disprove good faith, but merely to raise a fact issue.

The flip-side of appellants' all-or-nothing argument is a concern that if it is sufficient to defeat summary judgment that the nonmovant file an affidavit in response stating that no reasonable person in the defendant's position would have thought the actions were justified, summary judgment will never be obtained on official immunity grounds. Again we disagree. It is not sufficient to simply file a conclusory statement echoing the language of the supreme court test. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984) (affidavit simply stating legal conclusion is not sufficient to raise fact issue). The controverting affidavit must demonstrate the qualification of the affiant to state that conclusion and some basis upon which the conclusion is reached. The affidavit and

supplemental affidavit of appellees' expert in the present case are sufficient for this purpose. This does not mean, however, that every controverting affidavit in every official immunity case will be found sufficient to overcome the defendant's showing of good faith.

Because appellees' controverting evidence is sufficient to raise a fact issue concerning whether a reasonable person in Murillo's position could have thought the facts were such that they justified Murillo's acts, the trial court did not err in denying appellants' motion for summary judgment. Point of error one is overruled.

In point of error two, appellants contend that the trial court erred in refusing to grant summary judgment to the City of Laredo insofar as its assertion of immunity is based on Roberto Murillo's individual immunity. Because we have held under point of error one that Murillo failed to prove his entitlement to official immunity as a matter of law, the City's assertion must fail. Point of error two is overruled.

The order denying appellants' motion for summary judgment is affirmed.

GREEN, Justice, dissenting.

I dissent because I believe plaintiffs failed to adequately controvert Murillo's good faith affidavit, utilizing the test set out in *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994). Therefore, Murillo is entitled to a summary judgment upholding his official immunity defense.

Murillo has met his summary judgment burden of proving his affirmative defense of official immunity. The first two elements of the defense are either uncontested (Murillo was acting within scope of authority) or have been satisfied by judicial determination (Murillo's acts were discretionary). The remaining element (good faith) has been proved by the showing that a reasonably prudent traffic engineer *might have believed* that Murillo's actions were reasonable under the circumstances.

---

**2.** The court in *Kassen* specifically stated that official immunity is a question of fact. 887 S.W.2d at 6.

Plaintiffs can defeat Murillo's summary judgment motion only if they are able to successfully controvert Murillo's good faith proof; they must show that *no reasonable traffic engineer* in Murillo's position would have failed to place traffic control devices at the subject intersection. *City of Lancaster,* 883 S.W.2d at 657.

### Good Faith

Murillo is a highly qualified traffic engineer. He earned an electrical engineering degree from Southern Methodist University in 1983, and then held the position of Traffic Engineering Assistant for the City of Dallas from October 1983 until July 1990, at which time he was hired by the City of Laredo.

As Laredo City Traffic Engineer, Murillo is responsible for conducting and supervising traffic studies, including traffic counts and speed surveys; participating in research relating to traffic accident prevention, signalization needs, traffic counts, and speed studies; analyzing accident patterns at various locations and preparing reports detailing specific recommendations for improvement; reviewing preliminary and final plans concerning traffic operations, signing, signals, and pavement markings; and developing signal timing optimization plans for traffic signals along heavily travelled arteries to minimize vehicle stops and reduce intersection delays.

In carrying out these responsibilities, Murillo monitors various intersections around the city, including the subject intersection, for traffic and pedestrian traffic flow, and has acted to improve the intersections when circumstances dictated.

The subject intersection, Scott and Agustin, is one block away from the fully controlled intersection at San Bernardo. Two years before the accident in question, studies by the traffic engineer's office led to the synchronization of the traffic signals along Scott Street and the signal cycles were increased from 50 seconds to 70 seconds to help relieve traffic congestion. Low pedes-

trian counts at the intersection indicated no need for a signal device at that intersection, particularly since there was a controlled intersection one block away.[1]

Murillo's discretionary duties included "striking a balance" between his engineering judgments and the finite resources available to the City for traffic engineering improvements. He was unaware of any legal interpretation of the Laredo Code that he was under a *mandatory duty* to provide "traffic control devices" on "heavily travelled" roadways.

In his summary judgment proof, Murillo offered the affidavit of Joe Nix, an independent expert, who reviewed the conditions existing at the intersection shortly after the accident. Nix determined that a reasonable traffic engineer could conclude that no traffic control improvements were necessary at the intersection.

Based on the above summary judgment evidence, it can be concluded as a matter of law that Murillo met his burden of establishing his good faith when exercising his discretionary duties within the course of his authority.

### The Controverting Affidavit

At issue, then, is whether the nonmovant-plaintiffs have overcome the immunity defense by negating one of its elements, in this case the good faith element. Plaintiffs attempt to do this through the affidavits of their traffic expert, David Steitle.

When reviewing the controverting proof, it should be kept in mind that it is not enough for plaintiffs to prove by summary judgment evidence merely that some other traffic engineer would have placed traffic control devices at the intersection (a subjective standard); plaintiffs are required to establish that *no reasonable traffic engineer* would have failed to erect traffic control devices at the intersection (an objective standard). *City of Lancaster,* 883 S.W.2d at 657.

---

1. The David Steitle affidavit offered by appellants to controvert the good faith issue asserts that in 1988 a Laredo City Councilman requested a traffic study of the subject intersection, but that there was no record of the study ever being done.

It would appear, however, that a review of the intersection was done in connection with the Scott Street traffic. The work on light synchronization and increased light cycle times was completed in 1990.

In his first affidavit, dated March 4, 1994, expert Steitle gave his opinion that the Texas Manual on Uniform Traffic Control Devices and the Laredo Code "governed and defined" the duties of the City and its employees. He further expressed his opinion that the Code and Manual created mandatory duties on the City which were not complied with, specifically as to traffic control studies and in erecting traffic control devices on designated "heavily travelled" streets. The failure to perform the mandatory duties, he said, was negligence which proximately resulted in the death of decedent. It should be noted that this first affidavit makes no reference to the good or bad faith conduct of Murillo; at best it makes a *prima facie* negligence case against Murillo, which does not pierce the official immunity shield.

As to the mandatory nature of the Code and Manual, our opinion in *Murillo v. Garza,* 881 S.W.2d 199 (Tex.App.—San Antonio 1994, no writ) (*"Murillo I "*) held that Murillo's duties in this case were discretionary. The mandatory character of the language in the Code thus did not affect the discretionary nature of Murillo's duties as traffic engineer. To the extent Steitle's affidavit is based on an erroneous understanding of the law, it should be disregarded.

Steitle's supplemental affidavit, dated August 26, 1994, was clearly intended to meet the more difficult burden of overcoming the good faith element of official immunity that was announced in *City of Lancaster* in June 1994. Relying solely on the underlying factual basis set out in his first affidavit, Steitle offers only conclusory statements tracking the *City of Lancaster* language, while tailoring his statements to the facts of this case. He stated:

> ... A reasonably prudent traffic engineer ... could not have believed that there was no need to take appropriate action to ... remedy the ... traffic problems existing at Scott and San Agustin.... The failure to take such corrective action ... did not outweigh the clear risks of harm to the decedent ... by leaving the subject intersection without ... corrective action and in failing to comply with the mandatory requirements of the Laredo Code as it re-

lates to the installation of ... traffic control devices. ...

It is not sufficient to simply file a conclusory statement echoing the language of the Supreme Court test. There must be a valid basis for the statements made in the affidavit. *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984). Here, Steitle's essential contention that *in every case* a reasonable traffic engineer would have taken corrective action at the intersection must be based on some extraordinary duty imposed on the traffic engineer to do so. The criticism of Murillo's conduct must be based on some set of circumstances that are so compelling that they dictate a certain course of conduct by any reasonable traffic engineer. That his failure to take action constituted negligence simply does not rise to such a compelling level.

Thus, an inquiry must be made to determine the origins of the asserted "extraordinary" duty in this case. In Steitle's affidavits, other than the mere allegations of negligence, the only indicated basis for his conclusion that Murillo failed to act in good faith is that the Laredo Code imposed a mandatory duty on the traffic engineer. The supplemental affidavit also makes reference to this "mandatory" duty. But as previously noted, *Murillo I* rejected the contention that the Laredo Code created a mandatory duty on the traffic engineer in this context. *Murillo I,* 881 S.W.2d at 201.

The circumstances described by Steitle are not so compelling that Murillo's conduct falls short of the objective good faith standard announced in *City of Lancaster.* There, the Supreme Court set up a standard of objective legal reasonableness in determining good faith—in this case, whether a reasonably prudent traffic engineer "could have believed" that his actions were appropriate. The test is said to be analogous to the abuse of discretion standard of review in appellate courts: an abuse of discretion is shown only if the trial court could not have reasonably reached the decision in question. *City of Lancaster,* 883 S.W.2d at 657, n. 7. The test does not mean that the traffic engineer must prove that it would have been unreasonable to take corrective action; nor does it mean that the

engineer must prove that all reasonably prudent traffic engineers would have done what he did. If another traffic engineer of reasonable competence could disagree on the issue, the immunity should be recognized. *See Id.*, at 657. In reviewing Murillo's actions in light of this authority, it cannot be said that he could not have reasonably reached the decision to not install traffic control devices at the subject intersection.

The Supreme Court, in announcing the rule in *City of Lancaster,* clearly intended to make it more difficult to overcome an official immunity defense asserted by a government employee acting within the scope of his responsibilities. The new test originates from federal immunity law and, in drawing on federal authorities to describe the extent of the intended immunity protection, the court stated: "[Official] immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 656. (quoting *Swint v. City of Wadley,* 5 F.3d 1435, 1441–2 (11th Cir.1993), *modified,* 11 F.3d 1030 (11th Cir.1994), and *cert. granted sub nom., Swint v. Chambers County Comm'n,* —— U.S. ——, 114 S.Ct. 2671, 129 L.Ed.2d 808 (1994). Murillo is a highly qualified traffic engineer and is not plainly incompetent. And there is no evidence that he knowingly violated the law in this case. Accordingly, Murillo's immunity defense should be recognized and given effect.

I would reverse the trial court's order overruling appellant's motion for summary judgment and would render judgment that plaintiffs take nothing from appellant.