Lennie **DAVIS**, Appellant,

v.

**MEDICAL EVALUATION SPECIALISTS, INC.; Fred L. DeFrancesco, M.D.; John K. Dozier, M.D., P.A.; Connecticut Indemnity Company; and E.B.I. Companies, Inc., Appellees.**

No. 01–99–00980–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 2, 2000.

Rehearing Overruled Nov. 2, 2000.

Michael Kerensky, Houston, for Appellant.

John M. Skrhak, Dallas, Teresa Irene Ford, The Woodlands, for Appellees.

Panel consists of Justices COHEN, WILSON, and PRICE.*

## OPINION ON REHEARING

MURRY B. COHEN, Justice.

Appellees Connecticut Indemnity Company (CIC) and E.B.I. Companies, Inc. (EBI) have moved for rehearing to the panel and en banc. The remaining appellees have moved for en-banc rehearing only. The panel grants CIC and EBI's motion for panel rehearing. A majority of the justices of this Court have voted to deny both en-banc rehearing motions.

Our opinion issued September 7, 2000 is withdrawn, and this opinion is issued in its stead.

Appellant appeals a take-nothing summary judgment rendered against her. We affirm the judgment in part, reverse it in part, and remand the cause.

### Facts

Appellant was hurt at work and filed a workers' compensation claim. Once she reached her "maximum medical improvement," her treating physician, Dr. John Bergeron, examined her and assessed a permanent impairment rating of 17%. The workers' compensation carrier, Connecticut Insurance Company (CIC), then requested a medical examination by the physician of its choice, Dr. Fred DeFrancesco, who performs these examinations at Medical Evaluation Specialists's (MES) facilities. *See* 28 TEX.ADMIN.CODE § 69.15 (2000). MES is a company that markets a group of independent contractor doctors to insurance companies for the purpose of performing medical examinations requested under the Texas Workers' Compensation Act (TWCA).

After examining appellant, Dr. DeFrancesco gave her a 0% impairment rating. The Texas Workers' Compensation Commission (TWCC) then randomly selected a "designated doctor" to evaluate appellant. *See* TEX.LAB.CODE ANN. § 401.011(15) (Vernon Supp .2000). The doctor randomly selected was another MES contractor, Dr. John Dozier. He examined appellant and also gave her a 0% impairment rating. As a result of the two opinions from MES-affiliated physicians, the insurance carrier stopped paying benefits to appellant.

Appellant then filed this suit, alleging that local plaintiffs attorneys had detected a bias against claimants by doctors affiliated with MES. For example, appellant's pleadings alleged that when MES physi-

* The Honorable Frank Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

cians were involved, the reports all read the same and almost always found 0% impairment.[1] Appellant thus alleged that MES and its physicians were not participating in good faith in evaluating workers' compensation claims. Appellant contends that MES was subverting the TWCA by recruiting physicians who would ignore the American Medical Association (AMA) guidelines and knowingly assign false and fraudulent impairment ratings that would attract insurance company business.

Appellant protested the use of the two MES physicians. The TWCC ruled that Dr. Dozier's association with Dr. DeFrancesco through MES "may reasonably be perceived as having the potential to influence the conduct and decision of Dr. Dozier as a designated doctor." The TWCC then designated another doctor, one independent of MES, to evaluate appellant. The new designated doctor examined appellant and assigned an impairment rating of 21% under the AMA guides. Sometime after Dr. Dozier was disqualified and before appellant filed suit, CIC paid to appellant all money that had been previously denied.[2]

MES and Drs. DeFrancesco and Dozier moved for a rule 166a(c) summary judgment, claiming absolute derived judicial immunity and qualified "good faith" immunity. The other defendants, CIC and EBI,[3] also sought summary judgment, but their motion is not in the record. The trial court granted all motions without specifying grounds.

## Analysis

### A. Summary Judgment for MES, Dr. DeFrancesco, and Dr. Dozier

In point of error one, appellant contends it was error for the trial court to grant the 166a(c) summary judgment motions of MES and Dr. DeFrancesco and of Dr. Dozier based upon either absolute derived judicial immunity or qualified "good faith" immunity.

These appellees rely heavily on *Delcourt v. Silverman,* which held that a party has absolute derived judicial immunity when acting as part of the judicial system or as an "arm of the court." *See* 919 S.W.2d 777, 786 (Tex.App.—Houston [14th Dist.] 1996, writ denied). They contend that because TWCC is part of the judicial system, they have immunity based on their functions under the TWCA.

We agree that TWCC is a quasi-judicial body. *See Washburn v. Associated Indem. Corp.,* 721 S.W.2d 928, 932 (Tex. App.—Dallas 1986), *writ ref'd n.r.e.,* 735 S.W.2d 243 (Tex.1987). In *Delcourt,* the court adopted the "functional approach" to determine whether a court-appointed psychiatrist and an attorney ad litem had absolute derived judicial immunity. The court considered several factors: (1) whether the defendant's acts were intimately associated with the judicial process; (2) whether the defendant's acts were "functions to which the reasons for absolute immunity apply with full force"; and (3) whether the defendant was acting as an integral part of the judicial system or as

1. No summary judgment evidence supports these allegations, and none supports other pleaded allegations that the MES physicians were not even examining some patients, they were not examining others in conformity with American Medical Association guides, and MES was resisting requests that its examinations be monitored by the treating physician, as is allowed under the TWCA guidelines. We agree with the dissent that pleadings are not summary judgment evidence. We describe the pleadings only to establish the context of the lawsuit.

2. At oral argument, it was stated that CIC paid appellant more than $40,000 sometime after Dr. Dozier was disqualified, but before the designated doctor who was not affiliated with MES examined appellant. Such payment to appellant might imply a desire to avoid further investigation by her into MES's practices. No summary judgment evidence clearly establishes that sequence of events, however. Therefore, we decline to draw this inference.

3. EBI employees acted on behalf of CIC concerning appellant's claim.

an "arm of the court." 919 S.W.2d at 782, 786.

MES, Dr. DeFrancesco, and Dr. Dozier contend that *Delcourt* controls this case because both doctors acted pursuant to the TWCA and on behalf of the TWCC, either generally (Dr. DeFrancesco) or specifically (Dr. Dozier), when they examined appellant. Further, these appellees contend that their conduct is activity that the rule of absolute derived judicial immunity was intended to protect.

Dr. DeFrancesco contends he examined appellant pursuant to the TWCA and on behalf of the TWCC, then submitted the written reports to the TWCC. He also contends that his actions were performed in an official capacity and within the statutory authority provided an independent medical examiner and that the examination was performed in good faith.

■ Applying the *Delcourt* "functional approach" test first to Dr. DeFrancesco, we observe that he was not selected by the TWCC, a government agency. He was selected by CIC, a private corporation. *See* 28 TEX.ADMIN.CODE § 69.15 (2000). Consequently, the reasons for applying absolute derived judicial immunity set forth in *Delcourt* do not apply to Dr. DeFrancesco, even if his report was to be used in a TWCC proceeding. Therefore, we hold that Dr. DeFrancesco was not entitled to absolute derived judicial immunity.

■ In contrast, Dr. Dozier was designated by the TWCC pursuant to the TWCA. His claim of immunity is governed by the following statutes:

A person who performs services for the commission as a designated doctor, an independent medical examiner, a doctor performing a medical case review, or a member of a peer review panel has **the same immunity** from liability **as a commission member** under section 402.010.

TEX.LAB.CODE ANN. § 413.054(a) (Vernon 1996) (emphasis added). But unlike the judicial officers in *Delcourt*, a TWCC member is not entitled to absolute immunity:

A member of the commission is not liable in a civil action for an act performed **in good faith** in the execution of duties as a commissioner.

TEX.LAB.CODE ANN. § 402.010 (Vernon 1996) (emphasis added). Thus, Dr. Dozier is not entitled to absolute derived judicial immunity. That would give him more immunity than the commissioners who appointed him. Dr. Dozier, like TWCC members, has immunity only for acts performed in good faith. The *Delcourt* opinion is distinguishable because the extent of immunity there was a matter of common law, to be decided by the courts. *See id.,* 919 S.W.2d at 781. Because the extent of Dr. Dozier's immunity in this case is governed and limited by statute, *Delcourt* does not control the present case.

MES also claims absolute derived judicial immunity, based on *Delcourt.* MES contends its acts furthered the purposes of the governmental entity, TWCC, which directed Dr. DeFrancesco's actions in the first place. Thus, MES reasons, absolute derived judicial immunity extends to MES because it applies to Dr. DeFrancesco. We reject this argument, having held above that Dr. DeFrancesco has no absolute derived judicial immunity.

■ Nor is MES entitled in its own right to derived judicial immunity. MES does not conduct medical examinations. MES is a general business corporation that recruits doctors and provides administrative services. The act of promoting these doctors to insurance companies is routine commercial activity. MES was not acting as an arm of the court, and it is not a "person" doing any acts listed in section 413.054(a).

■ MES, Dr. DeFrancesco, and Dr. Dozier submitted summary judgment proof stating that their evaluations of appellant were reasonable and made in good faith. Appellant responded with the affi-

davit of her treating physician, Dr. Bergeron,[4] stating:

> My name is John Bergeron, I am of legal age and I am otherwise fully able to make this affidavit. All statements in this affidavit are true and correct and are based upon my personal knowledge.
>
> I am a treating physician of Lenny Davis. Attached to this affidavit is a copy of my current curriculum vitae. I am familiar with her condition, history and the results of her diagnostic tests. I have treated her for her on-the-job injury that occurred on February 30, 1996. I have evaluated her impairment as a result of that on-the-job injury in accordance with the "Guides to the Evaluation of Permanent Impairment," third edition, second printing, dated February, 1989, published by the American Medical Association. I am familiar with the requirements of the "Guides to the Evaluation of Permanent Impairment," third edition, second printing, dated February, 1989, published by the American Medical Association and have evaluated many patients pursuant to this publication in accordance with the Texas Workers' Compensation Act. Based upon my evaluation of Lennie Davis under the "Guides to the Evaluation of Permanent Impairment," third edition, second printing, dated February, 1989, published by the American Medical Association, I found a permanent impairment rating of seventeen (17%).
>
> I have attached to this affidavit my report stating the basis for this impairment rating.
>
> I have reviewed the impairment ratings given to Lennie Davis by Dr. DeFrancesco and Dr. Dozier. In my opinion, the zero (0%) percent impairment ratings for Lennie Davis are without any reasonable basis and demonstrate a lack of good faith on the part of these doctors. The only explanation for Dr. DeFrancesco's and Dr. Dozier's conclusion that Lennie Davis has an impairment rating of zero (0%) percent under the "Guides to the Evaluation of Permanent Impairment," third edition, second printing, dated February, 1989, published by the American Medical Association is a bad faith intent on the part of these physicians to wrongfully deny Lennie Davis her rightful workers' compensation benefits.

This affidavit created a fact issue as to whether Dr. DeFrancesco and Dr. Dozier acted in bad faith when they assessed appellant a 0% permanent impairment rating. Therefore, the trial court erred in granting summary judgment for MES, Dr. DeFrancesco, and Dr. Dozier.

MES, Dr. DeFrancesco, and Dr. Dozier contend that if any doctor, including themselves, testified their acts were reasonable, then any contrary summary judgment evidence would be irrelevant because their testimony would trump all others and entitle them to judgment as a matter of law. Citing *Putthoff v. Ancrum*, 934 S.W.2d 164, 166–67 (Tex.App.—Fort Worth 1996, writ denied), they contend that once they swear to their own good faith, "There can be no competent evidence that can work to defeat the granting of immunity." This is not and cannot be the law.

In *Putthoff*, the plaintiffs alleged that a negligent autopsy prevented them from proving their daughter was murdered. The defendant pathologists claimed qualified judicial immunity, and their motion for

---

4. Appellant also provided a "Supplemental Affidavit of Dr. John Bergeron." This affidavit was filed after the trial court granted summary judgment to MES, Dr. DeFrancesco, and Dr. Dozier on May 15, 1999. On June 4, 1999, the trial court denied the appellant's motion for rehearing. Thus, we will not consider the supplemental affidavit because appellate review of a summary judgment is limited to the record that was before the trial court judge when he granted the judgment. *Waddy v. City of Houston*, 834 S.W.2d 97, 101 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Documents added later are not considered. *Reeves v. Houston Lighting & Power Co.*, 4 S.W.3d 374, 378 (Tex.App.—Houston [1st Dist.] 1999, pet. denied).

summary judgment was denied. An interlocutory appeal followed, and the court declared:

> In *City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994), the supreme court adopted a good faith test consisting of "objective legal reasonableness." This standard applies in all qualified or official immunity cases. *Murillo v. Garza,* 881 S.W.2d 199, 202 (Tex.App.—San Antonio 1994, no writ). The element of good faith is satisfied when it is shown that a reasonably prudent person in the same or similar circumstances would have taken the same actions. *City of Houston v. Newsom,* 858 S.W.2d 14, 18 (Tex.App.—Houston [14th Dist.] 1993, no writ). To controvert summary judgment proof on good faith, the plaintiff must do more than show a reasonably prudent person would not have taken the same action; "the plaintiff must show that 'no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *City of Lancaster,* 883 S.W.2d at 657 (emphasis added).

*Putthoff,* 934 S.W.2d at 172. *Putthoff* does not state that there can be no controverting of a defendant's evidence of good faith. It states the opposite. The *Putthoff* plaintiffs did not lose because the defendants' affidavits were unassailable. They lost because their own controverting affidavit was inadequate. All it stated was that the defendant doctors were negligent; it wholly failed to say that they acted in bad faith. *See id.* at 173.

■ The plaintiff must produce evidence that "no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts." *Id.* at 172. Appellant did that with the affidavit of Dr. Bergeron. Once a plaintiff does that, she has raised a fact issue on whether the defendant's conduct was objectively unreasonable, no matter how reasonable the defendants or their experts believe it to be.

The appellees also rely on *City of Lancaster v. Chambers,* in which the Court stated that it was raising the standard of proof necessary for a plaintiff to defeat a motion for summary judgment based on a claim of official immunity. 883 S.W.2d 650, 656 (Tex.1994). The Court did not, however, state any absolute right of entitlement to resolution of the official immunity defense at the summary judgment stage. *Id.* at 657. It stated the opposite. After stating how "... to controvert the [defendant's] summary judgment proof on good faith ...," the justices declared, "We do concede that the test we create today is somewhat less likely to be resolved at the summary judgment stage than is the federal test." *Id.* Finally, nothing in *City of Lancaster* abrogates the standard and well known rules governing summary judgment review.

■ Thus, we must accept as true all evidence favorable to the non-movant and must apply all inferences and resolve all doubts in her favor. *Nixon v. Mr. Prop. Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). "We must also bear in mind that it is not [plaintiffs'] burden to disprove good faith, but merely to raise a fact issue." *Murillo v. Garza,* 904 S.W.2d 688, 692 (Tex.App.—San Antonio 1995, writ denied).

The three appellees claim that Dr. Bergeron's affidavit was conclusory and unsupported by any medical or other objective data. We disagree.

■ In holding that a plaintiff's affidavit raised a fact issue defeating an immunity claim, the *Murillo* court stated that "[t]he controverting affidavit must demonstrate the qualification of the affiant to state [his] conclusion and some basis upon which the conclusion is reached." *Murillo,* 904 S.W.2d at 692. "It is not sufficient to simply file a conclusory statement echoing the language of the supreme court test." *Id.* This is not the case with Dr. Bergeron's affidavit. It states both his qualifications to state his conclusion and the basis

for his conclusion—his own examination of appellant, as well as his consideration of Dr. DeFrancesco's and Dr. Dozier's impairment ratings. Dr. Bergeron had personal knowledge because he was appellant's treating physician. He had requisite expertise and had evaluated many patients under the TWCA and, specifically, under the mandated requirements of the AMA guides. Dr. Bergeron attached to his affidavit his report stating the basis for the impairment rating he assigned to appellant. He then stated his opinion that there was no basis except bad faith for finding a 0% impairment. As required by the summary judgment standard of review, we take all these statements and all reasonable inferences arising from them as true, we view them in the light most favorable to appellant, and we resolve all doubts in appellant's favor. *Phan Son Van v. Pena,* 990 S.W.2d 751, 753 (Tex.1999). Two reasonable inferences to be drawn are that (1) no doctor acting in good faith could have failed to see the symptoms Dr. Bergeron saw and (2) having seen them, no doctor acting in good faith could have concluded that a person in that condition had no disability whatsoever. Applying that standard of review, we hold that Dr. Bergeron's affidavit raised a fact issue.

We sustain the first point of error.

## B. SUMMARY JUDGMENT FOR CIC AND EBI

In the second point of error, appellant contends the trial court erred by granting summary judgment in favor of CIC and EBI.

■ CIC and EBI's summary judgment motion is not part of the appellate record. Appellant filed her brief, but never mentioned the missing motion. CIC and EBI then raised this deficiency in their brief, but appellant did not respond or move to supplement the record. Finally, when this deficiency was again noted during oral argument in June, appellant told the Court she would supplement the record with the missing motion, but never did.

Accordingly, we overrule the second point of error and affirm the summary judgment rendered in favor of CIC and EBI. *See Atchison v. Weingarten Realty Mgt. Co.,* 916 S.W.2d 74, 76–77 (Tex. App.—Houston [1st Dist.] 1996, no writ) (overruling points of error attacking summary judgment, when summary judgment motion was not included as separate item in appellate record and when appellee objected to the omission). *Cf. Pierson v. SMS Fin'l II, L.L.C.,* 959 S.W.2d 343, 348 (Tex.App.—Texarkana 1998, no pet.) (presuming summary-judgment response not requested or included in clerk's record supported the trial judge's granting of summary judgment).

We affirm that portion of the summary judgment rendered in favor of CIC and EBI. We reverse that portion of the summary judgment rendered in favor of MES, Dr. DeFrancesco, and Dr. Dozier and remand the cause.

The panel voted to grant appellees CIC and EBI's motion for panel rehearing.

Justice WILSON, dissenting on rehearing.

A majority of the justices voted to deny CIC and EBI's motion for en-banc rehearing.

A majority of the justices voted to deny appellees MES, Dr. DeFrancesco, and Dr. Dozier's motion for en-banc rehearing.

Justice TAFT notes his dissent from the denial of MES's, Dr. DeFrancesco's, and Dr. Dozier's motion for rehearing en banc, and he would join Justice WILSON'S dissent.

WILSON, Justice, dissenting on motion for rehearing.

I respectfully dissent. I would grant the motion for rehearing of Medical Evaluation Specialists, Inc. (MES), Fred L. DeFrancesco, M.D., and John K. Dozier,

M.D., P.A. and affirm the trial court's summary judgment.

In their motion for rehearing, MES, Dr. DeFrancesco, and Dr. Dozier express concern that, "In reaching its holding, this Court considered both evidence not properly before the Court and mere allegations contained in Appellant's various pleadings." The new opinion of the majority will heighten those concerns.

It is axiomatic that pleadings and allegations are not evidence to be considered when evaluating the affidavit of Dr. Bergeron, yet the new majority opinion adds even more nonmaterial "facts" and ruminations to the mix as if to bolster its conclusion. In its new footnote 2, we learn that appellees paid Davis over $40,000 and that this may imply "a desire to avoid further investigation by her [Davis] into MES's practices." Although consideration of this information is rejected by the majority, when the majority spends time in gross speculation on motives, it is difficult to avoid the thought that Dr. Bergeron's affidavit is being viewed through the prism of Davis' allegations.

We need not decide whether a difference in professional opinion can, in itself, ever raise an issue of fact relative to good faith. But this litigation is not a criminal case in which a mental state can be inferred from an act itself. I would hold here there is nothing inherent in a finding of an impairment rating of 0% that raises a material fact on the issue of good faith. The case is about the mental state of Dr. Dozier and Dr. DeFrancesco during the process by which they reached their conclusion. The evidence offered by Dr. Bergeron states that he is "familiar with her [Davis'] condition, history and the results of her diagnostic tests." If Dr. Bergeron's opinion is based on a history and results of tests, how can he possibly know the mental state of the other doctors without knowing what history and tests they considered?

Finally, the majority adds new material relative to the reasonable inferences to be drawn from Dr. Bergeron's affidavit. To my knowledge, we have no evidence about any of Davis' "symptoms," much less any evidence that Dr. Bergeron observed symptoms and that any reasonable doctor would necessarily have had to observe such alleged symptoms. I would respectfully suggest that the statements are not inferences, but premises independently constructed without any evidence.

I agree with the majority's holding that statute, not *Delcourt*, has governed and limited the extent of official immunity in this case. Furthermore, I agree that *City of Lancaster* guides our decision. *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex.1994). We recognize that the supreme court in *City of Lancaster* stated that it was raising the standard of proof necessary to defeat a claim of official immunity.

I dissent because I believe Davis, by using Dr. Bergeron's affidavit, failed to controvert adequately MES', Dr. Dozier's, and Dr. DeFrancesco's good-faith claim using the test set out in *City of Lancaster. Id.* at 655–57. A material difference exists between merely stating someone acted in bad faith and offering proof to show that he acted in bad faith. Therefore, MES, Dr. Dozier, and Dr. DeFrancesco were entitled to a summary judgment based on their official-immunity defense.

No dispute exists about whether MES, Dr. Dozier, and Dr. DeFrancesco presented sufficient summary judgment proof that their evaluations of Davis were reasonable and made in good faith, thus entitling them to official immunity. The difference in opinion occurs when we attempt to determine whether Davis' controverting affidavit of Dr. Bergeron is sufficient to raise a fact issue regarding the good-faith element of the official-immunity defense.

When reviewing the controverting proof, it should be kept in mind that it is not enough for a plaintiff to prove by summary judgment evidence merely that some other doctor would not have found a permanent disability rating of 0% (a subjective stan-

dard); instead, a plaintiff is required to establish that *no reasonable doctor* would have found a permanent disability rating of 0% (an objective standard). *See City of Lancaster*, 883 S.W.2d at 657; *Murillo v. Garza*, 904 S.W.2d 688, 690 (Tex.App.—San Antonio 1995, writ denied). The controverting affidavit must demonstrate the qualification of the affiant to state that conclusion and some basis on which the affiant reaches the conclusion. *See Murillo*, 904 S.W.2d at 692.

Dr. Bergeron's affidavit is the only evidence presented by Davis to controvert MES', Dr. Dozier's, and Dr. DeFrancesco's summary judgment evidence of good faith. The affidavit establishes that Dr. Bergeron treated Davis for her on-the-job injury, he was aware of her condition and history, and he conducted an evaluation of her permanent impairment according to American Medical Association ("AMA") guidelines. Attached to the affidavit is the report generated by Dr. Bergeron from the evaluation. His findings show a 17% permanent impairment rating. The affidavit clearly reflects that Dr. Bergeron was competent and capable in conducting the evaluation of Davis according to the Texas Workers' Compensation Act.

Dr. Bergeron makes the blanket statement that "[t]he only explanation for Dr. DeFrancesco's and Dr. Dozier's conclusion that Lennie Davis has an impairment rating of zero percent ... is a bad faith intent on the part of these physicians to wrongfully deny Lennie Davis her rightful worker's compensation benefits." Dr. Bergeron offers no valid basis or rationale for his statement. He does indicate that he has reviewed the impairment ratings or conclusions given by Dr. Dozier and Dr. DeFrancesco, but he does not discuss how or why these findings were a result of bad faith, rather than negligence, or even faulty diagnostic testing. The record is void of evidence that they did not follow the AMA guidelines or that they intentionally ignored or misread diagnostic tests. Dr. Bergeron does not even claim to have re-

viewed the actual reports or any background tests or examinations generated by Dr. Dozier and Dr. DeFrancesco that may or may not support the 0% impairment rating. The only basis for Dr. Bergeron's opinion that Dr. Dozier and Dr. DeFrancesco acted in bad faith is that they found a 0% impairment rating. The affidavit does not identify a basis for Dr. Bergeron's conclusion other than the difference in the impairment rating. Dr. Bergeron's affidavit merely assumes that Dr. Dozier and Dr. DeFrancesco reviewed the same raw data as he did. This is a fatal assumption to the affidavit's materiality on good faith.

The statements in Dr. Bergeron's affidavit are conclusory in nature. It is well settled that conclusory statements unsupported by facts in an affidavit are insufficient to raise a genuine issue of fact to prevent the rendition of summary judgment. *See Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994) (per curiam); *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984). Filing a conclusory statement echoing the language of the supreme court test is not sufficient. A valid basis must exist for statements made in the affidavit. *See Murillo*, 904 S.W.2d at 692; *Mercer*, 676 S.W.2d at 583. There is no valid basis in the record for Dr. Bergeron's opinion that Dr. Dozier and Dr. DeFrancesco had a bad faith intent.

The majority relies heavily on *Murillo*, 904 S.W.2d 688. Even *Murillo* states that just because the controverting affidavit in that case was sufficient "does not mean that every controverting affidavit in every official immunity case will be found sufficient to overcome the defendant's showing of good faith." *Id.* at 692.

*Heikkila v. Harris County* addresses the exact issue that *Murillo* foresaw. *Heikkila*, 973 S.W.2d 333 (Tex.App.—Tyler 1998, pet. denied). In *Heikkila*, the trial court rendered summary judgment for the defendant Harris County on the grounds that the county retained sovereign immunity because the medical examiner was entitled to official immunity. *Id.* at

334. The Tyler Court of Appeals affirmed the judgment and held that the plaintiffs' summary judgment response did not contain sufficient proof that "*no* reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.* at 336 (following analysis presented in *City of Lancaster,* 883 S.W.2d at 655–57); *see also City of Lancaster,* 883 S.W.2d at 657 (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)). The plaintiffs' proof of bad faith was that the doctor negligently disregarded evidence. *Heikkila,* 973 S.W.2d at 336. The court held that negligence was not proof of bad faith and, accordingly, affirmed the trial court's rendition of summary judgment. *Id.* Similarly, Dr. Bergeron's affidavit does not identify any intentional behavior indicative of bad faith other than a 0% impairment rating. Bad faith cannot rest in the 0% impairment rating, but in the process, if it exists, by which the doctors reached the 0% impairment rating.

In reviewing Davis' controverting affidavit in light of the *City of Lancaster* standard, I would hold that Dr. Bergeron's affidavit controverting MES', Dr. Dozier's, and Dr. DeFrancesco's good-faith claim was conclusory and did not raise a material fact issue. In my opinion, the trial court did not err in granting MES', Dr. Dozier's, and Dr. DeFrancesco's motion for summary judgment. I would overrule Davis' first point of error and affirm the judgment.