Reversed and Remanded and Memorandum Opinion filed December 14, 2004









Reversed and Remanded and Memorandum Opinion filed
December 14, 2004.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00741-CV

____________

 

KATHRYN LYNN
MICHAEL,
Appellant

 

V.

 

GARY SCOTT GODWIN, Appellee

 



 

On Appeal from the 308th
District Court

Harris County, Texas

Trial Court Cause No. 00-53872

 



 

M E M O R A N D U M   O P I N I O N

Appellant Kathryn Lynn Michael brought a
declaratory judgment and partition action against her former husband, appellee
Gary Scott Godwin, alleging that Godwin possessed community property that was
not divided in their divorce.  The trial
court instructed a verdict in favor of Godwin. 
Michael appeals, arguing in two points of error that the trial court
erred in (1) instructing a verdict against Michael and (2) striking certain
portions of her pleadings.  We reverse
and remand for a new trial.

 








Factual and Procedural Background

Michael and Godwin were divorced on
February 7, 1997.  In September 2000,
James Godwin (“James”), who is Gary Godwin’s father, informed Michael that
Godwin had stored a large amount of cash and gold at James’s house while the
couple was separated.  Michael
subsequently brought an action against Godwin on October 19, 2000, seeking a
declaratory judgment that certain assets in Godwin’s possession were community
property not divided on divorce and partition of same.  The assets included in Michael’s third
amended petition are the following:  $1
million cash; $160,000 in gold; an $84,898.57 promissory note payable to
Godwin; nearly $200,000 of undisclosed accounts receivable that were payable to
a company owned by Godwin; and a $40,000 promissory note payable to James.  At a pretrial hearing, the trial court struck
Michael’s pleadings as to the undisclosed accounts receivable and the $40,000
promissory note on the grounds that both had been divided in the divorce.  In May 2003, a trial was held as to the other
three assets.  After both parties rested,
Godwin moved for an instructed verdict, which the trial court granted.

Instructed Verdict








In her first point of error, Michael
argues that the trial court erred in instructing a verdict in Godwin’s
favor.  A court may direct a verdict for
a defendant (1) “when a plaintiff fails to present evidence raising a fact issue
essential to the plaintiff’s right of recovery” or (2) “if the plaintiff admits
or the evidence conclusively establishes a defense to the plaintiff’s cause of
action.”  Prudential Ins. Co. of Am.
v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  In reviewing a directed verdict, an appellate
court “consider[s] all of the evidence in a light most favorable to the party
against whom the verdict was instructed and disregard[s] all contrary evidence
and inferences.”  Szczepanik v. First
S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994).  “If there is any conflicting evidence of
probative value on any theory of recovery,” the directed verdict should be
reversed and the case remanded for jury trial. 
Id.  Because there was
evidence of probative value presented at trial tending to establish the
existence of the cash, gold, and promissory note, the trial court erred in
granting an instructed verdict.

James testified at trial that in January
1995 he walked into Godwin’s office and saw stacked inside Godwin’s safe a
plastic bag containing gold and a large amount of cash.  James again saw the cash and gold inside a
safe in July 1995 when Godwin came to live with James after Godwin and Michael
separated.  James also testified that on
at least two occasions Godwin told him that he had about $1 million in cash and
$160,000 in gold.  On one of these
occasions, Godwin said that he would not have to pay any money to Michael in
the divorce because “all of his money was right there” and that it was “free
money.”  James was familiar with what
gold and $1 million cash looked like because prior to the year 2000 or “Y2K”
computer scare, he had stored $1 million in cash and $450,000 in gold in two
safety deposit boxes of his own.

James’s wife, Debra, testified at trial
that in the fall of 1995, Godwin told her that he was “watering down his
assets” and that “he had purchased a substantial amount of gold.”  Debra, who worked as a stockbroker, set up
two accounts for Godwin in his daughters’ names; Godwin told Debra that Michael
“was not to be aware of these accounts being set up.”  James and Debra both testified that in
December 1998—almost two years after Godwin’s and Michael’s divorce—Godwin told
them that in a few months the statute of limitations would run and he would be
free to spend his money.








Michael also put on evidence showing that
Godwin had a potential source for such a large amount of cash.  James owned a successful company called
Godwin Machine Works.  After James
retired in 1993, Godwin took over as president of the company.  James returned in 1998 after suspecting
questionable accounting activity at Godwin Machine Works.  James explained that Godwin Machine Works
generated about $5,000 a week of scrap metal that was purchased in cash by
another company.  James said that he
found no entry for these monies in his investigation of the books of Godwin
Machine Works.  During Godwin’s tenure as
president, Godwin Machine Works had sold some of its used machines for cash to
a company called VN, but according to James, this cash also never made it into
the books of Godwin Machine Works. 
Finally, James testified that Godwin received cash payments from a
neighboring machine shop in return for permission to dispose of its waste oil
in the Godwin Machine Works waste oil barrels.

As evidence of the existence of the
$84,898.57 promissory note that was allegedly community property, Michael
offered a letter both addressed from and signed by Godwin that refinanced a
promissory note for that amount.

Because Michael presented evidence of
probative value as to the existence of the $1 million cash, the $160,000 gold,
and the $84,898.57 promissory note, and because we must disregard all contrary
evidence and inferences, we hold that the trial court erred in instructing the
verdict in Godwin’s favor.  Accordingly,
we sustain Michael’s first point of error.

Motion to Strike








In her second point of error, Michael
argues that the trial court erred in striking her pleadings as to the
undisclosed accounts receivable for Godwin’s company called PLS and the $40,000
promissory note payable to James.  The
trial court struck the pleadings at the pretrial conference a week before
trial.  The record provided to this court
contains Godwin’s April 15, 2002 “Opposed Motion to Strike Pleading.”  This motion addresses Michael’s first amended
petition, which only sought partition of the cash and gold.  The motion to strike upon which the pretrial
conference was based apparently addresses Michael’s third amended petition, but
the later motion to strike is not in the record.  Further, there is no written order granting a
motion to strike, and the judge’s ruling at the pretrial hearing is somewhat
unclear.[1]  Because we do not have the motion to strike
that was the subject of the pretrial hearing and because there is no written
order striking any of the pleadings, we are unable to adequately review
Michael’s contention that the trial court erred in granting Godwin’s
motion.  See Davis v. Med. Evaluation
Specialists, Inc., 31 S.W.3d 788, 795 (Tex. App.—Houston [1st Dist.] 2000,
pet. denied) (overruling appellant’s request to reverse summary judgment when
summary judgment motion was not included in appellate record).  Accordingly, we overrule Michael’s second
point of error.

For the reasons stated above, we reverse
the instructed verdict and remand for a new trial.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment
rendered and Memorandum Opinion filed December 14, 2004.

Panel
consists of Justices Yates, Fowler, and Guzman.

 











[1]  After both
parties made arguments regarding the motion to strike, the trial judge merely
stated that PLS, the company to which the undisclosed accounts receivable were
payable, was “off the table.”  In
response to Godwin’s counsel asking if the ruling also applied to the $40,000
note, the judge said, “The note, yes.”