

# NUMBER 13-21-00061-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GABRIEL MIRANDA JR., DECEASED,
MARIA FUENTES, GABRIEL MIRANDA SR.,
ALEXANDRA SUZANNE DELEON, REUBEN
ANTONIO DELEON III, AND JON HIDALGO DOE,                  Appellants,

v.

NORMA JEAN FARLEY,                                              Appellee.

On appeal from the 398th District Court
of Hidalgo County, Texas.

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Opinion by Chief Justice Contreras**

In this appeal, we are asked whether a lawsuit arising from the performance of an

autopsy is a "health care liability claim" under the Texas Medical Liability Act (TMLA). By

three issues, appellants Gabriel Miranda Jr., deceased, Maria Fuentes, Gabriel Miranda

Sr., Alexandra Suzanne DeLeon, Reuben Antonio DeLeon III, and Jon Hidalgo Doe argue that the trial court erred by dismissing their suit against appellee Norma Jean Farley for their failure to timely file a medical expert report pursuant to the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. We reverse and remand.

## I. BACKGROUND

The underlying lawsuit arose from an incident occurring on November 14, 2016, on a school bus operated by the Harlingen Consolidated Independent School District (Harlingen CISD). According to appellants, Gabriel Miranda Jr., a thirteen-year-old student at Vernon Middle School, "fell, or was pushed, out of the emergency door exit" of the bus during a field trip to Edinburg, causing his death.

Appellants—Gabriel's estate, his parents, and his siblings—filed their original petition on October 31, 2017, arguing that they sustained damages "caused by (a) the negligent and intentional actions of those responsible for [Gabriel's] death, and (b) the malicious and callous actions undertaken by those who have attempted to cover up the cause of his death." Appellants named the following as defendants: Harlingen CISD; Harlingen CISD's superintendent Arturo Cavazos; Vernon Middle School teachers A.J. Ayala and Michael Carlsted; bus driver Laura Castro Ruiz; the Edinburg Police Department (Edinburg PD); Edinburg PD Chief David White; the City of Edinburg; Edinburg Mayor Richard Garcia; Edinburg City Manager Richard Hinojosa; Hidalgo County; Hidalgo County Judge Ramon Garcia; the Texas Education Agency (TEA); TEA Commissioner Michael Morath; and Farley, a forensic pathologist who performed Gabriel's autopsy pursuant to a contract with Hidalgo County.

Appellants' petition alleged in part that the defendants failed to conduct an adequate investigation into the cause of Gabriel's death. More specifically, the petition

2

alleged the following facts:

71. The investigation conducted by Defendants into [Gabriel]'s Death ("Defendants' Investigation") was to last no more than 48 hours.

72. Defendants' Investigation appears to have been limited to the following:

    (a)    some photographs of the scene and the inside of Bus #118[1] were taken;

    (b)    some, but not all, of the witnesses were questioned;

    (c)    some, but not all, of the students on Bus #118 and Bus #38[2] were questioned;

    (d)    the video taken from inside of Bus #118 ("Bus #118 Video") was purportedly reviewed;

    (e)    after a business located near the scene reported that its outside security camera might have recorded ("CCTV Clip") [Gabriel]'s Fall, Defendant Edinburg PD made a hand copy of such CCTV Clip (*for reasons unknown, Defendant Edinburg PD did not take custody of the original digital recording of the CCTV Clip*);

    (f)    a toxicology report ("Toxicology Report") was ordered; and

    (g)    Defendant Hidalgo County instructed its pathologist, Defendant Farley, to conduct an autopsy ("Autopsy").

. . . .

74. Although never subsequently announced by any of the Defendants, the video system on Bus #118 Video had failed. Reminiscent of the infamous "18 minute gap" of the Watergate Tapes which resulted in the resignation of President Richard M. Nixon, the video system on Bus #118 shows a blank screen until after [Gabriel]'s Fall.

75. Although audio from Bus #118 was available, there is no indication that the Defendants' Investigation included more than just a cursory examination.

---

[1] According to appellants, Gabriel was riding on Bus #118.

[2] According to appellants, Bus #38 was also carrying students from Vernon Middle School on the field trip to Edinburg.

3

. . . .

80. Although the Autopsy conducted by Defendants Hidalgo County and Farley concluded that the "manner" of [Gabriel]'s Death was suicide ("Autopsy Conclusion"), the Autopsy Conclusion appears to be nothing but a sham.

. . . .

84. Beginning the day of [Gabriel]'s Death and continuing through the filing of this lawsuit, Plaintiffs have not ceased asking questions ("Family Investigation").

85. In part, the Family Investigation has found the following:

(a) Witnesses saw [Gabriel] fall, not jump, from the [emergency exit door];

. . . .

(h) Defendant Edinburg PD ruled [Gabriel]'s Death a suicide even before Defendant Farley reached her Autopsy Conclusion;

(i) in support of her Autopsy Conclusion, Defendant Farley replied*: (paraphrasing) that it is common for young men from the Valley to commit suicide, even without ever showing prior signs of depression*; and

(j) an independent review of the Autopsy revealed that the Autopsy Conclusion is not defendable.

(Emphasis in original.) Appellants raised various causes of action, and they requested actual and exemplary damages and attorney's fees. Farley answered the suit with a general denial on March 23, 2018.

In an amended petition filed on June 22, 2018, appellants named only Harlingen CISD and Farley as defendants. As to Farley, the amended petition alleged only causes of action of intentional infliction of emotional distress and defamation. The amended petition contained the same factual allegations as the original petition. It added a request for an injunction forbidding the defendants from "making any public or private pronouncements and assertions" that Gabriel was depressed or committed suicide.

4

On July 30, 2018, Farley filed a motion to dismiss arguing that appellants failed to file a medical expert report to support their claims within 120 days of her answer, as required by the TMLA. *See id.* § 74.351(b). She argued that the TMLA applies because the claims against her are "health care liability claims" (HCLCs) as defined in the statute. *See id.* § 74.001(a)(13). Specifically, Farley contended that the claims against her "are directly related to an alleged departure from accepted standards of the practice of medicine, forensic medicine." *See id.*

On August 20, 2018, appellants filed a response to Farley's motion to dismiss in which they argued that their claims against Farley are not HCLCs. *See id.* Specifically, appellants argued: (1) Farley was not a "health care provider or physician" with respect to Gabriel because he was already deceased at the time she performed her autopsy; (2) for the same reason, she did not provide "medical care" or "health care" to Gabriel; and (3) they are not alleging that Farley did anything that proximately resulted in Gabriel's injury or death. *See id.*

After a hearing, the trial court granted Farley's motion to dismiss by order dated August 21, 2018.[3] Appellants attempted to appeal the trial court's interlocutory ruling, but we dismissed the appeal for lack of jurisdiction because the judgment was not final and there was no statutory authorization for an interlocutory appeal. *Miranda v. Farley*, No.13-18-00645-CV, 2019 WL 1716839, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2019, no pet.) (mem. op.). Subsequently, appellants' claims against Farley were severed

---

[3] The order states: "[It is] ORDERED, ADJUDGED, AND DECREED that Defendant, NORMA JEAN FARLEY, M.D.'s Motion to Dismiss is in all things GRANTED, and that the Plaintiffs' entire cause of action against Defendant is dismissed with prejudice to refiling of same, and Defendant be awarded attorney fees." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1) (requiring the trial court to award attorney's fees upon motion by a defendant physician or health care provider if the claimant does not timely file an expert report in an HCLC). The order does not specify the amount of attorney's fees awarded.

from their pending claims against Harlingen CISD, thereby rendering the August 21, 2018 judgment final. This appeal followed.

## II. DISCUSSION

Appellants argue by their first issue that the trial court erred by determining that their claims against Farley were HCLCs.

### A. Applicable Law and Standard of Review

Under the TMLA, a plaintiff asserting an HCLC must serve each physician or health care provider defendant with a written expert report, accompanied by the expert's curriculum vitae. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The report must fairly summarize "the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). If a plaintiff fails to file an expert report within 120 days after the date each defendant's original answer is filed, the trial court must dismiss the HCLC with prejudice and award attorney's fees upon the defendant's motion. *Id.* § 74.351(b).

An HCLC is defined by the statute as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). Whether a claim is an HCLC is a matter of statutory construction, which is a purely legal question that we review de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). "We construe a statute's words according to

6

their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd or nonsensical results." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015); *see* Tex. Gov't Code Ann. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

To determine whether a cause of action falls under the statute's definition of an HCLC, we examine the claim's underlying nature. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). Artful pleading does not alter that nature. *Id.* In making the determination, we consider the entire court record, including the pleadings, motions and responses, and any relevant evidence properly admitted. *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).

## B. Arguments

As they did in their response to Farley's motion to dismiss, appellants argue on appeal that their claims against Farley are not HCLCs because: (1) Farley was not a "health care provider" and did not provide "medical care" to Gabriel because he was already deceased at the time she performed the autopsy; and (2) they are not alleging that Farley's actions or omissions "proximately result[ed] in injury to or death of a claimant." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13); *see also id.* § 74.001(a)(10) (defining "health care"); *id.* § 74.001(a)(19) (defining "medical care"). Appellants note that coroners and pathologists are not among the examples of "health care providers" listed in the TMLA. *See id.* § 74.001(a)(12)(A) ("'Health care provider' means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: (i) a registered nurse; (ii) a dentist; (iii) a podiatrist; (iv) a

7

pharmacist; (v) a chiropractor; (vi) an optometrist; (vii) a health care institution; or (viii) a health care collaborative certified under Chapter 848, Insurance Code."). Relatedly, appellants argue on appeal that the TMLA's expert report requirement does not apply because they are not "claimants" as defined in the statute. *See id.* § 74.001(a)(2) (defining "claimant" as "a person, including a decedent's estate, seeking or who has sought recovery of damages in a[n HCLC]" and stating that "[a]ll persons *claiming to have sustained damages as the result of the bodily injury or death* of a single person are considered a single claimant" (emphasis added)).

Finally, appellants noted at the motion to dismiss hearing and in their brief that Farley filed a response to their discovery request on May 4, 2018, even though the TMLA generally stays discovery in HCLCs until the claimant files an expert report. *See id.* § 74.351(s). Without reference to authority, appellants argue that by filing discovery responses, Farley "acknowledged" that the claims against her were not HCLCs and that she thereby "waived any right to subsequently file a request for dismissal under [the TMLA]."

In her responsive brief, Farley argues that appellants' claims "related to [her] performance of the autopsy are necessarily claimed departures from accepted standards of medical care, health care, or professional or administrative services directly related to health care," and are thus HCLCs. *See id.* § 74.001(a)(13). She notes that, in *Loaisiga*, the Texas Supreme Court held that a rebuttable presumption arises that a claim is an HCLC "if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga*, 379 S.W.3d at 256 (noting that "[t]he broad language of the TMLA evidences legislative intent for the statute to have expansive application"). Farley notes that she is

8

a physician, and she argues that appellants did not rebut the presumption set forth in *Loaisiga* that the claim against her is an HCLC.

## C.    Analysis

As noted, to be an HCLC, a claim must satisfy three elements: (1) the defendant must be "a health care provider or physician"[4]; (2) the cause of action must be "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care"; and (3) the defendant's alleged departure from accepted standards must have proximately caused "injury to or death of a claimant." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

We begin by addressing the second element because it is dispositive. Farley argues that appellants' claims are HCLCs because they alleged a departure from accepted standards of: (1) medical care, (2) health care, or (3) professional or administrative services directly related to health care. *See id.*[5]

### 1.    Medical Care or Health Care

"Medical care" is defined as "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a

---

[4] With regard to the first element, appellants argued that Farley is not a "health care provider" with respect to Gabriel, but they do not dispute that she is a licensed medical doctor—i.e., a "physician." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(23)(A) ("'Physician' means . . . an individual licensed to practice medicine in this state . . . .").

[5] There is no suggestion that appellants' claims against Farley are for "treatment," "lack of treatment," or a departure from accepted standards of safety. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

patient during the patient's care, treatment, or confinement." *Id.* § 74.001(a)(19).[6] "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10).

Critically, the statutory definitions of "health care" and "medical care" both contemplate that the conduct at issue must be done "to" or "on behalf of" a "patient." *See id.* § 74.001(a)(10), (a)(19). The statute does not define "patient"; accordingly, we apply its common meaning unless that would lead to absurd or nonsensical results. *See Ross*, 462 S.W.3d at 501. The primary dictionary definition of "patient" is "an individual awaiting or under medical care and treatment." MERRIAM-WEBSTER ONLINE DICTIONARY, *Patient*, https://www.merriam-webster.com/dictionary/patient (last visited Jan. 4, 2022).

At least two Texas intermediate appellate courts have held in memorandum opinions that a deceased person cannot be a "patient" for purposes of the TMLA. *See Salazar v. Dickey*, No. 04–08–00022–CV, 2010 WL 307852, at *1 (Tex. App.—San Antonio Jan. 27, 2010, pet. denied) (mem. op.); *Hare v. Graham*, No. 2–07–118–CV, 2007 WL 3037708, at *1 (Tex. App.—Fort Worth Oct. 18, 2007, pet. denied) (mem. op.). The plaintiff in *Hare* alleged that the defendant doctor performed an unauthorized autopsy of her deceased husband, and like appellants in this case, she brought a claim for intentional infliction of emotional distress. 2007 WL 3037708, at *1. The Fort Worth Court of Appeals held that "a person must be alive in order to be a 'patient'"; therefore, the claim

---

[6] The specified section of the Texas Occupations Code defines "practicing medicine" as

the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who: (A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services.

TEX. OCC. CODE ANN. § 151.002(a)(13).

10

at issue was not an HCLC. *Id.* at *3. In support of this holding, the court cited the Consent to Medical Treatment Act, which defines "patient" as "a person who is admitted to a hospital or residing in a nursing home." *Id.* (citing TEX. HEALTH & SAFETY CODE ANN. § 313.002(8)[7]). It also cited an earlier opinion holding that the performance of an autopsy was not a form of medical "treatment" and the subject of the autopsy was not a "patient." *Id.* (citing *Putthoff v. Ancrum*, 934 S.W.2d 164, 171 (Tex. App.—Fort Worth 1996, writ denied) (analyzing whether government defendants' actions were discretionary so as to entitle them to official immunity)). Observing that "the idea that a cadaver can be a 'patient' is, on its face, illogical," the court in *Hare* held that "a dead body is not a patient" and cannot "receive 'medical care, treatment, or confinement' after death." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(19)).

In *Salazar*, the plaintiff sued his stepsister and her employer, a funeral home, alleging that "they failed to inform him of the death of his father . . . in an effort to hide assets, destroy documents, and avoid an autopsy." 2010 WL 307852, at *1. The plaintiff also sued the physician who signed his father's death certificate, alleging that the physician had a duty to perform an autopsy. *Id.* Citing *Hare*, the San Antonio Court of Appeals held that the claims against the physician were not HCLCs because the plaintiff's father "was already dead at the time [the physician] allegedly departed from acceptable standards and practices" and so "could not be a 'patient.'" *Id.* at *4.[8]

---

[7] The Consent to Medical Treatment Act has since been amended to define "patient" as "a person who: (A) is admitted to a hospital; (B) is residing in a nursing home; (C) is receiving services from a home and community support services agency; or (D) is an inmate of a county or municipal jail." TEX. HEALTH & SAFETY CODE ANN. § 313.002(8).

[8] As further discussed *infra*, the Texas Supreme Court explicitly declined in 2016 to address the question of whether "persons can no longer be patients after they die" for TMLA purposes. *Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 535 (Tex. 2016).

We agree with the conclusion of these courts. Within the context of the TMLA, the plain meaning of the term "patient" does not include deceased persons. Accordingly, in this case, Gabriel was not a "patient" and appellants' claims against Farley did not allege a departure from accepted standards of "health care" or "medical care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10), (13), (19).[9]

On appeal, Farley argues "[i]t would be absurd to require that a forensic pathologist whose conduct otherwise meets the definitions of 'medical care' or 'heath care,' must perform an autopsy on a live patient to fulfill the requirements of the statute." We disagree. *See Ross*, 462 S.W.3d at 501. To the contrary, as the *Hare* court recognized, it would be absurd and nonsensical to expand the definition of "patient" to include anything, living or dead, upon which a physician may pass medical judgment. To do so would be to effectively read the word "patient" out of the statute. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) ("We will give effect to all the words of a statute and not treat any statutory language as surplusage if possible."). Although the Legislature intended for the TMLA to have "expansive application," *Loaisiga*, 379 S.W.3d at 256, its application is not limitless. The Legislature could have easily defined "patient" to include subjects of post-mortem examinations—and it could have specifically included such examinations within the scope of "health care" of "medical care"—but it did not. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014) ("We . . . presum[e] the Legislature included words that it intended to include and omitted words it intended to omit."). This Court will not expand the definition beyond the plain meaning of the words used in the statute.

---

[9] Moreover, because Gabriel was not a "patient," the presumption set forth in *Loaisiga* never arose and appellants were under no burden to rebut it. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012).

### 2. Professional or Administrative Services Directly Related to Health Care

We next consider whether appellants' claims against Farley are for "professional or administrative services directly related to health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). "Professional or administrative services" means "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *Id.* § 74.001(a)(24).

In *Christus Health Gulf Coast v. Carswell*, the Texas Supreme Court considered whether a claim based on post-mortem conduct concerned "professional or administrative services directly related to health care." 505 S.W.3d 528, 536 (Tex. 2016). The plaintiff alleged, among other things, that hospital staff fraudulently induced her into signing a permission form allowing an affiliated hospital to perform an autopsy of her deceased husband. *Id.* at 531. Specifically, she alleged that she signed the form only because a nurse misrepresented to her that the Harris County Medical Examiner's Office (HCMEO) "did not take the case and would not be performing an autopsy or investigating" her husband's death. *Id.* A jury found in favor of the plaintiff on that issue and awarded actual and exemplary damages. *Id.* at 533. On appeal, the hospital argued that the suit should have been dismissed under the TMLA because the plaintiff's claims were based on "professional or administrative services directly related to health care," but no expert report was filed. *Id.* In response, the plaintiff argued that the autopsy was not an "inseparable part of the rendition of health care" because "neither the hospital nor [the nurse] had authority to go forward with an autopsy without first contacting the HCMEO and making disclosures required by law." *Id.* at 534. The plaintiff further contended that

the autopsy is not "medical care" or "health care" because her husband ceased to be a "patient" of the hospital at the time of his death. *Id.*

In examining the nature of the plaintiff's claims, the supreme court first observed that her allegations factually implicated the hospital's requirements for licensure under the Texas Code of Criminal Procedure, Texas Health and Safety Code, and Texas Administrative Code. *Id.* at 534–35 (citing TEX. CODE CRIM. PROC. ANN. arts. 49.25, 49.32(a), 49.35; TEX. HEALTH & SAFETY CODE ANN. § 241.053(a)(3); 25 TEX. ADMIN. CODE §§ 133.1(c), 133.121(1)(F)). Therefore, the suit involved "professional or administrative services" as defined in the statute. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(24)).

Next, the court considered whether those services were "directly related to health care." *Id.* at 535–36 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)). In doing so, the court first set forth the TMLA's definitions of "health care" and "medical care." *Id.* at 535 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10), (a)(19)). Then, referring to the plaintiff's argument that her claim is not an HCLC because her husband was not a "patient" at the time of the autopsy, the court observed as follows:

> Even if persons can no longer be patients after they die, a question we need not decide today, the inquiry does not end there. As to a claim based on professional or administrative services, the statute does not require that the person alleging injury was a patient during the relevant period. Neither does it require that the alleged injury must have occurred during or contemporaneously with health care, nor that the alleged injury was caused by health care. Rather, the [TMLA] applies to a claim for injury or death proximately caused by a "departure from accepted standards of medical care, or health care, or safety or professional or administrative services *directly related to* health care." [TEX. CIV. PRAC. & REM. CODE ANN.] § 74.001(a)(13) (emphasis added). Here, the question is whether the post-mortem claims by the [plaintiff] were directly related to health care—that is, directly related to an act or treatment that was or should have been performed or furnished by the hospital for, to, or on behalf of [her husband] during his treatment or confinement.

14

*Carswell*, 505 S.W.3d at 535 (emphasis in original). The court concluded:

> The [plaintiff's] post-mortem fraud claim was essentially that immediately following [her husband's] death, the hospital began covering up for the deficient health care provided to him. That was done, [she] claimed, by the hospital's failing to notify the [HCMEO] of [her husband's] death and the circumstances surrounding it, but rather . . . immediately obtaining [the plaintiff's] consent for an autopsy at an affiliated hospital by an associated pathology practice group. Even though the jury refused to find that [the hospital] negligently caused [her husband's] death, it remains that the [plaintiff's] post-mortem fraud claim was that the hospital's obtaining [her] consent for the autopsy was based on and for the purpose of concealing the hospital's malpractice that caused [her husband's] death. Given these circumstances, the claim was directly related to acts or treatments the [plaintiff] alleged were improperly performed or furnished, or that should have been performed or furnished, to [her husband] during his treatment and confinement. As such, the fraud claim was an HCLC.

*Id.* at 536 (citation omitted).

The *Carswell* court proceeded to distinguish the facts in that case from those considered in *Hare* and *Salazar*. *Id.* at 536–37. The court noted that, "unlike the Carswells' post-mortem claim, the plaintiff in *Hare* was not complaining that the post-mortem actions of the defendants were taken for the purpose of concealing deficient pre-mortem health care." *Id.* at 536 (citing *Hare*, 2007 WL 3037708, at *1). And, like *Hare* but unlike the claims made in *Carswell*, "the claims in *Salazar* were not linked to pre-mortem health or medical care of the deceased; they were based entirely on post[-]mortem actions of the defendants that were directed to a dead body." *Id.* at 537 (citing *Salazar*, 2010 WL 307852, at *1).[10]

---

[10] The court in *Carswell* further addressed the plaintiff's contention that her claim regarding her husband is not an HCLC because *she* was not a "patient":

> The [TMLA] does not limit its reach to persons receiving or having received health or medical care—it applies to "claimants." [TEX. CIV. PRAC. & REM. CODE ANN.] § 74.001(a)(13). As to professional or administrative services, it applies when the claimed injury is directly related to health care of *some* patient. *See id.* § 74.001(a)(10), (13). As noted above, the professional or administrative services underlying the [plaintiff's] complaint were directly related to the improper health care [she] alleged [her husband]

This case is plainly more akin to *Hare* and *Salazar* than it is to *Carswell*. For purposes of appellants' suit, Gabriel was never a "patient" of Farley or of any other physician or health care provider, and there were no other "patients" whose care is related to appellants' claims, directly or indirectly. *See id.* ("As to professional or administrative services, [the TMLA] applies when the claimed injury is directly related to health care of *some* patient."). Appellants allege that Farley erred in her determination of Gabriel's manner of death, but they do not allege that she did so for the purpose of concealing "deficient pre-mortem health care." *See id.* at 536. Instead, appellants' claims are "based entirely on post[-]mortem actions . . . that were directed to a dead body." *Id.* at 537. Therefore, even assuming that the claims are for a "departure from accepted standards of . . . professional or administrative services," the allegedly defective services were not "directly related to health care." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13); *Carswell*, 505 S.W.3d at 537.

### III.  CONCLUSION

Appellants' claims against Farley are not HCLCs because they do not allege a departure from accepted standards of "medical care, health care, or professional or administrative services directly related to health care." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).[11] Therefore, the trial court erred in dismissing the suit pursuant to the expert report requirement of the TMLA. We sustain appellants' first issue.[12]

---

received, or health care [she] alleged he should have received but did not.

*Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 537 (Tex. 2016).

[11] In light of our conclusion, we need not address appellants' arguments: (1) that their claims are not HCLCs because they did not allege that Farley proximately caused injury or death to a claimant; (2) that their claims are not HCLCs because they are not "claimants" under the statute; or (3) that Farley waived her right to seek dismissal under the TMLA by filing discovery responses. *See* Tex. R. App. P. 47.1.

[12] Because we have sustained appellants' first issue, we need not address their second issue,

16

The trial court's judgment is reversed, and we remand for further proceedings consistent with this opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
6th day of January, 2022.

---

arguing the trial court erred by finding that no compliant expert report was timely filed; or their third issue, arguing the trial court erred by denying their request for injunctive relief. *See id.*